[No. B224723. Second Dist., Div. One. Apr. 8, 2011.]

HUGH J. McMACKIN, Plaintiff and Respondent, v.
KELLIAN McGINNESS EHRHEART, Individually and as Administrator,
etc., et al., Defendants and Appellants.

130

**COUNSEL**

Law Offices of Randy S. Snyder and Randy S. Snyder for Defendants and Appellants.

Wolf Group L.A., Ellen K. Wolf and Richard Seegman for Plaintiff and Respondent.

OPINION

**MALLANO, P. J.**—In a case of first impression, we are asked to determine whether a *Marvin* claim[1] based on a decedent's promise to leave her cohabitant a life estate in real property is governed by the one-year statute of limitations of Code of Civil Procedure section 366.3, and, if so, whether the doctrine of equitable estoppel can be applied to preclude assertion of section 366.3's statute of limitations.[2] We conclude that the *Marvin* claim here is an action to enforce a claim that arises from a promise or agreement with a decedent for distribution from an estate and, thus, is governed by section 366.3, which requires the action to be commenced within one year after the date of death. We further conclude that, depending on the circumstances of each case, the doctrine of equitable estoppel may be applied to preclude a party from asserting the statute of limitations set forth in section 366.3 as a defense to an untimely action where the party's wrongdoing has induced another to forbear filing suit.

## BACKGROUND

The facts and evidence pertinent to this appeal are taken from the declarations submitted by the parties in connection with the application for injunctive relief. The original complaint alleged as follows.

Plaintiff Hugh J. McMackin lived with Patricia Lyn McGinness in her home from approximately 1987 until McGinness died intestate on October 1, 2004. McMackin was never on the title to the home but continued to occupy it after McGinness's death. Defendants Kimberly Frost and Kellian McGinness Ehrheart are McGinness's daughters and are the heirs of McGinness's estate. On February 25, 2008, more than three years after McGinness's death, Ehrheart opened a probate of the McGinness estate (*Estate of McGinness* (Super. Ct. L.A. County, No. LP013431)). In April 2009, Ehrheart delivered a lease agreement for the home to McMackin, which he refused to sign. On November 23, 2009, Ehrheart served McMackin with a 60-day notice to quit. On January 13, 2010, McMackin filed a complaint, the gravamen of which was that McGinness promised him a life estate in the home upon her death in consideration for 17 years of his "love, affection, care and companionship." The complaint alleged causes of action for declaratory relief; intentional interference with quiet enjoyment; abuse of process; trespass to land; nuisance; injunctive relief; breach of contract; and promissory estoppel.

---

[1] A *Marvin* agreement is an express or implied contract between nonmarital partners declared enforceable in *Marvin v. Marvin* (1976) 18 Cal.3d 660 [134 Cal.Rptr. 815, 557 P.2d 106].

[2] Undesignated statutory references are to the Code of Civil Procedure.

A.  *Temporary Restraining Order*

On January 21, 2010, McMackin filed an ex parte application for a temporary restraining order and for an order to show cause why an injunction should not issue to enjoin Frost and Ehrheart from evicting him from the home. In his ex parte application, McMackin claimed that he possessed a life estate in the home based on a promise made by McGinness that he would be entitled to reside in the home for the rest of his life "in consideration of their life together [and] their mutual care and companionship."

In support of the ex parte application, McMackin declared that in 1987 he began residing with McGinness at her home. McGinness maintained title to the home solely in her name. He and McGinness made a life together and cared for one another continuously until McGinness's death from cancer on October 1, 2004. On several occasions McGinness agreed that he could live in the home for the rest of his life "after her death" and that she "made this promise in consideration of the love, affection, care and companionship we shared over those 17 years." After McGinness died, McMackin continued to reside in the home and paid for the expenses of maintaining it, including the mortgage, until Ehrheart unilaterally advised "the bank" in 2009 to send her the mortgage bills. In April 2009, Ehrheart delivered a residential lease to McMackin, which he refused to sign. On November 23, 2009, Ehrheart delivered a 60-day notice to quit to McMackin.

Magdalena Guerrero, the housekeeper for McMackin and McGinness, declared that "on approximately twenty (20) different occasions" McGinness told her that she wanted McMackin to live in the home for the rest of his life. Maureen Zumbro, a neighbor, declared that on several occasions McGinness told her that she wanted McMackin to live in the home for the rest of his life. Zumbro promised McGinness that she would prevent Frost and Ehrheart from throwing McMackin out of the home after McGinness's death. She told Frost of her promise to McGinness.

In a declaration attached to the opposition to McMackin's ex parte application, Ehrheart declared that since October 1982 the home had been the sole property of McGinness, who had never transferred any interest in the home to McMackin or anyone else. According to Ehrheart, "It was always our understanding that the [home] was left to [Frost and Ehrheart]." After McGinness passed away, McMackin told Frost and Ehrheart not to open probate because the lender would then be able to call the loan. Ehrheart and Frost relied on McMackin, who was a sophisticated businessman, for advice. Frost and Ehrheart declined McMackin's request to give him a small percentage of ownership in the home so that he could take the mortgage deduction. Ehrheart also relied on McMackin's advice to refrain

from making any claim on McGinness's individual retirement account so that Wells Fargo Bank would not call the equity line of credit on the home. She later discovered the advice he gave her was incorrect.

Ehrheart further declared that McMackin has never accounted for insurance funds provided to McMackin to establish bank accounts for Frost's and Ehrheart's sons' educations. McMackin had promised to release "the rest" of the insurance funds for the boys' tuition after Frost and Ehrheart delivered a lease to him. Ehrheart delivered a lease to him within two weeks of his request. McMackin never mentioned that he thought he had a life estate in the home prior to retaining counsel. Ehrheart filed the probate action on February 25, 2008, and letters of administration were issued on April 14, 2008.

Frost declared that prior to May 5, 2009, McMackin had never made a claim regarding the home. McGinness never told Frost she had given McMackin any interest in the home. According to Frost, Guerrero is employed by McMackin and "would do anything he asks, including signing the declaration filed in support of [McMackin's] request for an injunction." McMackin hired Zumbro for the company at which he works; McMackin participates in hiring and firing decisions; and Zumbro told Frost she "would like to avoid at all costs" having to box up and move McMackin's belongings out of the home.

The Honorable Richard B. Wolfe granted McMackin's application for a temporary restraining order and set a hearing on an order to show cause why a preliminary injunction should not issue for March 25, 2010. The trial court also set an order to show cause hearing to determine why the case should not be transferred to the probate court for hearing on March 2, 2010. (The record does not indicate whether the Mar. 2, 2010 hearing was held or the outcome of any such hearing.)

B.   *Preliminary Injunction*

On March 25, 2010, the trial court issued a tentative ruling to grant the preliminary injunction in which the court stated that the agreement was "an oral non-marital *Marvin* agreement." Following oral argument, the trial court requested supplemental briefing and continued the hearing to April 23, 2010.

In their supplemental brief, filed on April 9, 2010, Frost and Ehrheart argued that section 366.3's one-year limitations period precluded equitable tolling of the statute of limitations because the statute itself "provides express limitations on when tolling occurs." McMackin contended the opposite.

On April 20, 2010, McMackin filed a first amended complaint to add a claim for breach of a *Marvin* agreement. The first amended complaint alleged

causes of action for declaratory relief (as to life estate); intentional interference with quiet enjoyment; abuse of process; trespass to land; nuisance; injunctive relief; breach of contract; breach of *Marvin* agreement; declaratory relief (as to *Marvin* rights); promissory estoppel; conversion; and declaratory relief (as to possession of personal property).

On April 23, 2010, the application for a preliminary injunction came on for hearing. The trial court provided the parties with a written tentative ruling. After argument, the trial court adopted its tentative ruling as its final order and granted the preliminary injunction. The trial court concluded that under principles of equitable estoppel, the bar of the statute of frauds did not apply to McMackin's oral *Marvin* agreement. The trial court also determined that the one-year limitations period of Code of Civil Procedure section 366.3 was inapplicable because McMackin was "not making a 'claim' " as defined by Probate Code section 9000, subdivision (a).[3] The trial court did not address in its order McMackin's argument that equitable estoppel precluded the application of the statute of limitations, and neither party requested a statement of decision or called to the attention of the trial court any omission or ambiguity in its ruling.

### C. *Demurrer*

Thereafter, Frost and Ehrheart filed a demurrer to the first amended complaint (complaint). On August 18, 2010, the Honorable Bert Glennon, Jr., rejected Frost and Ehrheart's argument that section 366.3 barred McMackin's claim. The trial court sustained the demurrer to the complaint with leave to amend as to the causes of action for intentional interference with quiet enjoyment, abuse of process, nuisance, and breach of contract. The trial court sustained the demurrer without leave to amend as to the "cause of action" for injunctive relief because "[i]njunctive relief is a remedy, not a cause of action." It overruled the demurrer to the causes of action for declaratory relief (as to life estate), breach of *Marvin* agreement, declaratory relief (as to *Marvin* agreement), and promissory estoppel.

McMackin filed a second amended complaint alleging causes of action for declaratory relief (as to life estate); abuse of process; trespass to land; breach

---

[3] Probate Code section 9000 provides: "As used in this division: [¶] (a) 'Claim' means a demand for payment for any of the following, whether due, not due, accrued or not accrued, or contingent, and whether liquidated or unliquidated: [¶] (1) Liability of the decedent, whether *arising in contract, tort, or otherwise.* [¶] (2) Liability for taxes incurred before the decedent's death, whether assessed before or after the decedent's death, other than property taxes and assessments secured by real property liens. [¶] (3) Liability of the estate for funeral expenses of the decedent. [¶] (b) 'Claim' does not include a dispute regarding title of a decedent to specific property alleged to be included in the decedent's estate. [¶] (c) 'Creditor' means a person who may have a claim against estate property."

of contract; breach of *Marvin* agreement; declaratory relief (as to *Marvin* rights); promissory estoppel; conversion; and declaratory relief (as to possession of personal property).

Frost and Ehrheart filed an appeal from the trial court's order granting McMackin's application for a preliminary injunction.

## DISCUSSION

Frost and Ehrheart contend that the trial court erred in issuing the preliminary injunction, claiming McMackin cannot demonstrate a likelihood of prevailing on the merits. This is so, they maintain, because the trial court erred in determining that McMackin's claim was not barred by section 366.3, which requires the action to be commenced within one year after the date of death. We agree that because the claim is based on a decedent's promise to leave her cohabitant a life estate in real property, it is an action to enforce a claim that arises from a promise or agreement with a decedent for distribution from an estate and, thus, is governed by section 366.3.

But we agree with McMackin that, depending on the circumstances of each case, the doctrine of equitable estoppel may preclude a party from asserting section 366.3 as a defense to an untimely action where the party's wrongdoing has induced another to forbear filing suit.

### A. *Standard of Review*

"In deciding whether to issue a preliminary injunction, a court must weigh two 'interrelated' factors: (1) the likelihood that the moving party will ultimately prevail on the merits and (2) the relative interim harm to the parties from issuance or nonissuance of the injunction. [Citation.] Appellate review is limited to whether the trial court's decision was an abuse of discretion. [Citation.]" (*Butt v. State of California* (1992) 4 Cal.4th 668, 677–678 [15 Cal.Rptr.2d 480, 842 P.2d 1240].)

"The trial court's determination must be guided by a 'mix' of the potential-merit and interim-harm factors; the greater the plaintiff's showing on one, the less must be shown on the other to support an injunction. [Citation.] Of course, '[t]he scope of available preliminary relief is necessarily limited by the scope of the relief likely to be obtained at trial on the merits.' [Citation.] A trial court may not grant a preliminary injunction, regardless of the balance of interim harm, unless there is some possibility that the plaintiff would ultimately prevail on the merits of the claim. [Citation.] Unless potential merit is conceded, an appellate court must therefore address that issue when

reviewing an order granting a preliminary injunction." (*Butt v. State of California, supra,* 4 Cal.4th at p. 678.)

B.  *Section 366.3 Applies to the Claim*

■ Frost and Ehrheart contend that McMackin's action against the estate is barred as a matter of law by section 366.3, which requires that an action to enforce a claim arising from an agreement with a decedent for distribution from an estate be filed within one year after the decedent's death. We conclude because McMackin's claim arises from McGinness's promise to a distribution of a life estate in the home, it is a claim for distribution within the meaning of section 366.3.

Section 366.3 provides: "(a) If a person has a claim that arises from a promise or agreement with a decedent to distribution from an estate or trust or under another instrument, whether the promise or agreement was made orally or in writing, an action to enforce the claim to distribution may be commenced within one year after the date of death, and the limitations period that would have been applicable does not apply. [¶] (b) The limitations period provided in this section for commencement of an action shall not be tolled or extended for any reason except as provided in Sections 12, 12a, and 12b of this code, and former Part 3 (commencing with Section 21300) of Division 11 of the Probate Code, as that part read prior to its repeal by Chapter 174 of the Statutes of 2008. [¶] (c) This section applies to actions brought on claims concerning persons dying on or after the effective date of this section."[4]

In an attempt to avoid the one-year statute of limitations of section 366.3, McMackin argues that his action against the estate for a life estate in the home does not constitute a " 'claim' " to a " 'distribution from an estate.' " He cites Probate Code section 9000 (see *ante*, fn. 3), which governs creditors' claims and defines a "claim" as a "demand for payment." He maintains that section 366.3, which refers to a "claim," applies only to a "demand for payment." Thus, McMackin contends that because his claim to a life estate in the home is not a "demand for payment," section 366.3 does not apply. We disagree because his claim arises from a promise or agreement with a decedent for distribution from an estate within the meaning of section 366.3.

*Estate of Ziegler* (2010) 187 Cal.App.4th 1357 [114 Cal.Rptr.3d 863] and *Stewart v. Seward* (2007) 148 Cal.App.4th 1513 [56 Cal.Rptr.3d 651]

---

[4] Code of Civil Procedure sections 12, 12a, and 12b pertain to the computation of time when the last day for the performance of an act is a holiday. Former part 3 of division 11 of the Probate Code, commencing with former section 21300, which pertained to no contest clauses, was repealed in 2008. (Stats. 2008, ch. 174, § 1, eff. Jan. 1, 2010; see *Giammarrusco v. Simon* (2009) 171 Cal.App.4th 1586, 1615 [91 Cal.Rptr.3d 50].)

(*Stewart*) illustrate that section 366.3 applies to McMackin's claim. In *Estate of Ziegler*, the decedent executed a document signing over his home and property to his neighbor, Richard LaQue, in exchange for the continued provision of his care and daily meals. (*Estate of Ziegler*, at p. 1361.) The document stated that " '[t]his written note will be immediately active if and when I no longer can reside in my home due to death.' " (*Ibid.*) On January 15, 2006, the decedent died, and in September 2006, the public administrator filed a petition to probate the decedent's estate. More than one year after the decedent's death, LaQue filed a creditor's claim for $9,556, representing the value of his services on a quantum meruit theory. Less than a week later, LaQue filed an alternative creditor's claim for $318,600, the estimated value of the house, representing the value of his services on a contract theory. Although the Court of Appeal noted that the equities were entirely on the side of LaQue rather than the company representing German nationals who were the decedent's closest heirs, the court rejected LaQue's claims on the basis that they were barred by the statute of limitations set forth in section 366.3, subdivision (a). (*Estate of Ziegler*, at p. 1366.)

The court noted that generally section 366.3 "has been construed to 'reach any action predicated upon the decedent's agreement to distribute estate or trust property in a specified manner.' " (*Estate of Ziegler, supra*, 187 Cal.App.4th at p. 1365.) The court stated that the term " 'distribution' " typically refers to the disbursement of assets to heirs. (*Ibid.*) And although one does not normally use "distribution" to refer to the payment of a creditor's claim or the award of specific property to a person who is claiming it as the true owner, "the Legislature clearly intended . . . section 366.3 to apply, at a minimum, to a claim based on a contract to make a will," referring broadly in the legislative history to all " 'equitable and contractual claims to distribution of estates.' [Citation.]" (*Ibid.*) The court "assume[d] . . . that a claim based on a contract to make a will is either a creditor's claim or a claim to specific property and hence is not a claim for a 'distribution' in the technical sense," but it is "a claim for a 'distribution' in the sense that the Legislature intended" with respect to the enactment of section 366.3, subdivision (a). (*Estate of Ziegler*, at p. 1365.)

The court determined that LaQue's claim was "indistinguishable from a claim on a contract to make a will. *The Agreement was a promise to transfer property upon death.* It could be performed only after death, by the decedent's personal representative, by conveying property that otherwise belonged to the estate." (*Estate of Ziegler, supra*, 187 Cal.App.4th at p. 1365, italics added.) And the court held that even if the written agreement was viewed as a present obligation to convey a distribution of the estate, it would still come within the scope of section 366.3. Accordingly, the court concluded that LaQue's claims, filed more than one year after the decedent's death, were time-barred by section 366.3. (*Estate of Ziegler*, at p. 1366.)

In *Stewart, supra*, 148 Cal.App.4th 1513, Division Three of this appellate district held that the plaintiff's claim, arising from an oral promise concerning distribution from the decedent's estate, was governed by section 366.3, not by section 366.2 as urged by the plaintiff.[5] (*Stewart*, at p. 1515.) There, the plaintiff's mother had entered into an oral agreement with her husband that he would execute a will leaving 50 percent of real property she held in joint tenancy with him to the plaintiff and the remaining 50 percent to two grandchildren. (*Id.* at p. 1516.) Subsequently, the mother died. Instead of honoring his promise, the husband executed a will devising 100 percent of the property to the two grandchildren. The husband died on October 26, 2004. On July 13, 2005, the plaintiff filed a creditor's claim seeking a 50 percent interest in the real property, which was rejected by the administrator on July 21, 2005. On October 28, 2005, the plaintiff filed a complaint against the administrator of the estate. The administrator successfully demurred to the plaintiff's complaint on the basis that it was barred by the one-year limitations period of section 366.3. (*Stewart*, at p. 1517.)

On appeal, the plaintiff argued that her action was timely under section 366.2 because she filed her complaint within three months of the notice of rejection of her creditor's claim. (*Stewart, supra*, 148 Cal.App.4th at p. 1519.) The court rejected the plaintiff's argument that because she was seeking money damages from the husband based on personal liability the claim came within section 366.2. Instead, the court concluded that the plaintiff's action was governed by section 366.3 because the plaintiff was suing on " 'a promise or agreement with a decedent to distribution from an estate or trust or . . . another instrument . . . .' [Citations.]" (*Stewart*, at p. 1521; see also *Ferraro v. Camarlinghi* (2008) 161 Cal.App.4th 509, 555 [75 Cal.Rptr.3d 19] [§ 366.3 "extends to any claim that 'arises from' the decedent's promise or agreement" to make a distribution].)[6]

---

[5] Section 366.2 provides in pertinent part: "(b) The limitations period provided in this section for commencement of an action shall not be tolled or extended for any reason except as provided in any of the following, where applicable: [¶] (1) Sections 12, 12a, and 12b of this code. [¶] (2) Part 4 (commencing with Section 9000) of Division 7 of the Probate Code (creditor claims in administration of estates of decedents)."

[6] As noted, Probate Code section 9000 provides in relevant part: "As used in this division: [¶] (a) 'Claim' means a demand for payment for any of the following, whether due, not due, accrued or not accrued, or contingent, and whether liquidated or unliquidated: [¶] (1) Liability of the decedent, whether arising in contract, tort, or otherwise."

Probate Code section 9352, subdivision (a) provides: "The filing of a claim or a petition . . . tolls the statute of limitations otherwise applicable to the claim until allowance, approval, or rejection."

Probate Code section 9353, subdivision (a) provides in pertinent part: "[A] claim rejected in whole or in part is barred as to the part rejected unless, within the following times, the creditor commences an action on the claim . . . : [¶] (1) If the claim is due at the time the notice of rejection is given, 90 days after the notice is given."

■ Under the reasoning of *Estate of Ziegler* and *Stewart*, we conclude that McMackin's action to enforce a claim to a life estate in the home is controlled by section 366.3. The gravamen of the complaint is McGinness's promise to give McMackin a life estate in the home at her death in consideration for the love, affection, care and companionship that McMackin gave to McGinness during their relationship. Thus, McMackin's claim for a life estate arises from a decedent's promise of a distribution from an estate, and, accordingly, is a claim for distribution within the meaning of section 366.3.

We are not persuaded by McMackin's argument in his appellate brief that "[t]here is a distinction between enjoying a life estate, and . . . receiving a distribution from an estate of a decedent." In support of his argument he cites to a concurring opinion in *Bernard v. Foley* (2006) 39 Cal.4th 794 [47 Cal.Rptr.3d 248, 139 P.3d 1196], which merely noted in passing that by virtue of a trust amendment, the decedent had changed a distribution "from an outright distribution to a life estate." (*Id.* at p. 817 (conc. opn. of George, C. J.).) That case does not stand for the proposition that a life estate cannot be a distribution within the meaning of section 366.3. McMackin's argument that his right to a life estate vested during McGinness's lifetime and is "simply a continuation of the status quo" is not persuasive because title to the home was continuously held in McGinness's name and McMackin claims that in consideration of the love, affection, care and companionship he provided her, McGinness promised he could live in the home for the rest of his life after her *death.*

In sum, McGinness died on October 1, 2004. Section 366.3 requires that an action to enforce a claim that arises from a promise or agreement with a decedent for distribution from an estate must be commenced within one year after the date of death. McMackin did not assert his claim to a life estate in the home in any manner until he filed his complaint on January 13, 2010, six years after McGinness's death. Thus, we conclude his claim to a life estate in the home would be barred by the one-year limitations period of section 366.3, unless the doctrine of equitable estoppel applies.

C. *The Doctrine of Equitable Estoppel*

■ McMackin contends that even if section 366.3 applies, the doctrine of equitable estoppel precludes Frost and Ehrheart from asserting that he failed to file his claim within the one-year statute of limitations. Frost and Ehrheart argue that, as a matter of law, there can be no avoidance of the statute of limitations, pointing to the language of subdivision (b) of section 366.3: "The limitations period provided in this section for commencement of an action shall not be tolled or extended for any reason . . . ." As the trial court

erroneously ruled that section 366.3 did not apply, it is not surprising that it made no specific reference to the issue of whether equitable estoppel precluded the application of the one-year statute. As neither party requested a statement of decision or called to the attention of the trial court any omission or ambiguity in its ruling, we must give all intendments to the trial court and conclude that it impliedly determined in issuing the preliminary injunction that equitable estoppel precluded the application of the one-year statute. (See *In re Marriage of Starr* (2010) 189 Cal.App.4th 277, 287–288 [116 Cal.Rptr.3d 813].) We are not asked, nor do we decide, whether this implied ruling was supported by substantial evidence because Frost and Ehrheart made it clear at oral argument on appeal that they challenge the application of equitable estoppel as a matter of law, not whether the evidence supported its application for the purposes of the issuance of a preliminary injunction. We reject that challenge and conclude that, depending upon the circumstances of each case, the doctrine of equitable estoppel may preclude the application of section 366.3.

In *Battuello v. Battuello* (1998) 64 Cal.App.4th 842 [75 Cal.Rptr.2d 548] (*Battuello*), equitable estoppel was applied to preclude the defendant from asserting section 366.2 as a defense to an untimely action where the defendant's conduct induced the plaintiff into forbearing to file suit within the applicable limitations period. (*Battuello*, at p. 847, superseded by statute as stated in *Stewart, supra*, 148 Cal.App.4th at p. 1522, fn. 6.)

In *Battuello*, which preceded the enactment of section 366.3 and relied on section 366.2, the court held that there is a distinction between the doctrine of equitable estoppel, on the one hand, and the tolling or extension of the statute of limitations, on the other hand. (*Battuello, supra*, 64 Cal.App.4th at p. 847.) Tolling concerns the commencement of the statute of limitations and the circumstances under which the running of the limitations period may be suspended. (*Ibid.*) In contrast, equitable estoppel comes into play only after the limitations period has run to preclude a party from asserting the statute of limitations as a defense to an untimely action where the party's conduct has induced another into forbearing to file suit. (*Ibid.*) The *Battuello* court held that although "section 366.2, subdivision (a)(2) clearly shows the Legislature intended that the statute of limitations set forth therein not be 'tolled' or 'extended,' the statute says nothing about equitable estoppel. In the absence of such language, or legislative history suggesting that was what the Legislature intended (respondents have cited none), we conclude the doctrine still applies." (*Battuello, supra*, 64 Cal.App.4th at p. 848.)

Relying on *Stewart, supra*, 148 Cal.App.4th 1513, Frost and Ehrheart argue that "there is no equitable tolling of the Statute of Limitations set forth in Code of Civil Procedure, section 366.3." In *Stewart*, the decedent died on

October 26, 2004. On July 13, 2005, the plaintiff filed a creditor's claim, which was rejected by the administrator on July 21, 2005. On October 28, 2005, the plaintiff filed a complaint. The complaint was dismissed on demurrer, the trial court having determined that the action was barred by the one-year statute of limitations set forth in section 366.3. On appeal, the plaintiff argued that equitable estoppel prevented the application of section 366.3's one-year limitations period because the administrator mailed the rejection of the plaintiff's claim eight days after the administrator signed it, giving rise to an inference that the administrator intended to mislead the plaintiff with regard to the time limitations for filing an action. (*Stewart, supra*, at p. 1523.) The court disagreed, reasoning that because 30 days of inaction may be deemed to be a rejection of the claim under Probate Code section 9256, an eight-day delay in mailing the rejection notice could not give rise to equitable estoppel.[7] (*Stewart, supra*, at p. 1523.)

In further support of its holding, the *Stewart* court briefly examined the statutory language of section 366.3, noting that the "the limitations period provided shall not be tolled or extended *for any reason* except for specific enumerated circumstances. Section 366.3 states at subdivision (b): 'The limitations period provided in this section for commencement of an action *shall not be tolled or extended for any reason except* as provided in Sections 12, 12a, and 12b of this code, and Part 3 (commencing with Section 21300) of Division 11 of the Probate Code.' (Italics added.) This is confirmed by the legislative history of section 366.3, which provides 'This bill establishes the statute of limitations to file a claim for distribution of an estate under any instrument or an equitable estoppel theory as one year from the date of decedent's death, *which may not be tolled except for a "no contest" action.*' (Sen. Rules Com., Off. of Sen. Floor Analyses, 3d reading analysis of Assem. Bill No. 1491 (1999–2000 Reg. Sess.) as amended Apr. 4, 2000, p. 3, italics added.)" (*Stewart, supra*, 148 Cal.App.4th at pp. 1523–1524; see *ante*, fn. 4.)

The legislative history quoted in *Stewart* speaks of a one-year statute of limitations for a claim for distribution from an estate by two means: one, under an instrument such as a will, or two, under an equitable estoppel theory permitting enforcement of an oral promise or agreement. It does not speak to the application of equitable estoppel to preclude a party who has wrongfully induced another to forbear filing suit from asserting the statute of limitations as a defense to an untimely action.

---

[7] Probate Code section 9256 provides: "If within 30 days after a claim is filed the personal representative or the court or judge has refused or neglected to act on the claim, the refusal or neglect may, at the option of the creditor, be deemed equivalent to giving a notice of rejection on the 30th day."

■ As stated in *Battuello*, there is a distinction between tolling and equitable estoppel. Tolling concerns the suspension of the statute of limitations. The doctrine of equitable estoppel applies only after the limitations period has run to preclude a party from asserting the statute of limitations as a defense to an untimely action where the party's conduct has induced another into forbearing to file suit. (*Battuello, supra,* 64 Cal.App.4th at p. 847.) Thus, the restrictions on tolling set forth in section 366.3, subdivision (b) do not apply to the issue of whether the doctrine of equitable estoppel can be used to preclude a party from asserting the statute of limitations.

■ Principles of equity have long been enshrined as a vital part of California's jurisprudence. Enacted in 1872, Civil Code section 3517 provides, "No one can take advantage of his own wrong." As our Supreme Court has observed in keeping with that maxim, "The statute of limitations was intended as a shield for [the defendant's] protection against stale claims, but he may not use it to perpetrate a fraud upon otherwise diligent suitors. Thus, in 19 Am. & Eng. Ency., p. 243, it is stated that the 'defendant, having, by his own wrongdoing, prevented the plaintiff from instituting his suit, will not be permitted to take advantage of his own wrong by setting up the statute as a defense.' " (*Pashley v. Pacific Elec. Ry. Co.* (1944) 25 Cal.2d 226, 231–232 [153 P.2d 325].)

The Legislature has revealed no intention to abrogate the equitable principles that provide relief to someone who has been induced by another party's wrongdoing to forbear filing suit. It sought only to establish clearly a statute of limitations for a claim for distribution from an estate by either a written instrument or by an oral agreement or promises enforceable by the application of equitable estoppel.

We are mindful that "[a]bout a century ago the California Supreme Court explained 'the policy of the law is to facilitate, and not to delay, the settlement of the estates of deceased persons.' [Citation.] If anything the intervening years have reinforced that policy. It is clear that there is a pervasive and dominant judicial and legislative theme that probate matters must be expeditiously handled to effect a prompt distribution of property to the decedent's designated beneficiaries and to avoid unnecessary delay and expense." (*Estate of Horn* (1990) 219 Cal.App.3d 67, 71 [268 Cal.Rptr. 41].) Here, both sides delayed: The estate was opened three years four months after the decedent's death, and the claimant filed suit almost two years later. The finder of fact will determine the facts and whether equitable estoppel precludes application of the one-year limitations period of section 366.3. We are not called upon here to make that determination or to set limits or apply the doctrine of laches to claims such as McMackin's.

## DISPOSITION

The order is affirmed.

Rothschild, J., and Chaney, J., concurred.