Filed 2/28/13  Estate of Belmont CA2/1

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| Estate of EILEEN S. BELMONT, Deceased. | B239827 |
| | (Los Angeles County Super. Ct. No. SP007406) |
| DAVID BELMONT, Petitioner and Respondent, v. DIANE M. SATER, as Executrix, etc., Objector and Appellant. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, Lawrence Cho, Judge.  Affirmed as modified.

Oldman, Cooley, Sallus, Birnberg & Coleman and David Coleman for Objector and Appellant.

Mitchell, Silberberg & Knupp, Peter G. Gelblum and Andrew C. Spitser for Petitioner and Respondent.

_____

Diane M. Sater, executrix of the Estate of Eileen Belmont (executrix), appeals a judgment of the probate court granting David Belmont (David) a life estate in a condominium in Santa Monica owned by his sister Eileen Belmont (Eileen)[1] pursuant to the resulting trust doctrine. At trial, the court found that funds David contributed to the 1985 purchase of a house in Santa Monica could be traced to funds Eileen used to purchase the condo at issue in 2003. The executrix argues that (1) David's action is barred by the one-year statute of limitations of Code of Civil Procedure section 366.3,[2] (2) the evidence does not support David's life estate based upon a resulting trust, and (3) the trial court's remedy was improper. We affirm the judgment as modified.

## FACTUAL BACKGROUND AND PROCEDURAL HISTORY

Eileen Belmont, David's sister, died testate April 1, 2007 in Ohio. The terms of Eileen's will executed February 11, 1994 provided that David would receive $50,000 and the residue of the estate would go to The Columbus Jewish Foundation (Foundation).

### 1. Purchase of Fifth Street House

In approximately July 1986 David purchased a house in Santa Monica, California with some financial help from his mother, Wilma Belmont (Wilma). The purchase price was $135,000, consisting of (1) $30,000 in cash from David; (2) a $5,000 loan David took out, and (3) a $100,000 loan from Wilma to David. David paid back some, but not all of the $100,000 loan from Wilma. David testified that "[i]n the beginning it was a loan and then it turned into a gift." In that regard, he viewed it as an advancement on his inheritance. Title in the Fifth Street house was taken in Wilma's name because David did not have satisfactory credit. Wilma did not live in the house.

David understood that the Fifth Street house was his, and at one time or another, both Wilma and Eileen stated that the Fifth Street house belonged to David. Max Stoner,

---

[1] As several of the parties share the same last name, to avoid confusion we refer to them by their first names.

[2] All statutory references herein are to the Code of Civil Procedure unless otherwise noted.

Wilma's attorney, knew that Wilma gave David some monies with which to buy the Fifth Street house because his credit was poor. Stoner also believed that David paid back some of the loan to Wilma, and Wilma believed David would end up with the house although he could not pay for it himself. Stoner understood that Wilma treated the Fifth Street house as belonging to David, and that she wanted him to have the house. James Burden, CPA, did Eileen's and Wilma's tax returns. Wilma did not take a tax deduction for the Fifth Street house. Burden also understood that Wilma had purchased the Fifth Street house for David, and that Eileen considered the Fifth Street house to be David's house.[3]

David lived in the Fifth Street house from 1985 until August 2000. During this time, David paid all of the property taxes and insurance and made necessary repairs, and paid $10,000 to remodel the bathroom.

2.      *Agreement that David Will Receive Proceeds of Fifth Street House*

In late 1993 or early 1994, Wilma became ill and was placed in a nursing home in Ohio, near where she lived. In late 1999 or early 2000, Eileen told David that Wilma would be coming to live with her and she needed David's help to care for Wilma. Eileen told David that he needed to sell his house. At that time, David, Wilma and Eileen orally agreed that David would sell the Fifth Street house, move back to Ohio, and the proceeds of sale could be used for Wilma's care and the remainder would be held by Eileen for David's use in buying a new home in Santa Monica at a later date. David sold the Fifth Street house based upon this agreement, and in August 2000 moved back to Ohio to care for Wilma until her death on October 13, 2001.

While in Ohio, David became mentally and physically disabled. David had diabetes, heart disease, and bipolar disorder, and was unemployed. David had been on SSI since April 2001 and collected other government assistance.

Wilma's will dated December 29, 1993 left the Fifth Street house to David with the condition that he pay the taxes and other costs. However, Wilma's trust dated

---

[3] Stoner and Burden's testimony was presented through their deposition transcripts.

3

March 22, 2000, was established solely for the benefit of Eileen, and disinherited David unless Eileen predeceased David, in which case Wilma's estate would go to David. Wilma told her estate lawyer that she omitted David from her estate plan because he was not handling his money well.

### 3. *Sale of Fifth Street House*

In 2000, David sold the Fifth Street house for $370,000. Wilma reported the gain from the sale on her tax return. The net proceeds were approximately $177,000. Of this sum, as agreed by Wilma, Eileen and David, approximately $20,000 was spent on Wilma's care and the remaining approximately $150,000 was deposited into an interest bearing account in Eileen's name. After payment of $58,000 in taxes, the balance remaining in the interest-bearing bank account in December 2002 was $109,305.82.

### 4. *Purchase of the Condo*

In January 2003, pursuant to the parties' agreement, David used the funds on deposit in Eileen's account from the sale of the Fifth Street house to buy a condo in Santa Monica for $286,000. David made a down payment of over $100,000. Due to David's disability and other financial problems, Eileen obtained a loan for the remaining amount of the purchase price. Eileen told third parties that it was her intent that David live in the condo for the rest of his life. Title was taken in Eileen's name with the belief that she would outlive David, and upon his death, she would move into the condo. At one point, Eileen told her estate lawyer that she wanted to pay off the mortgage and leave the property to David. However, Eileen died unexpectedly in April 1, 2007 at age 55. The condo was paid in full prior to Eileen's death.

In the summer of 2006, David moved into the condo and has lived there ever since.

### 5. *Eileen's Death and Probate in California of the Santa Monica Condo*

After Eileen's death pursuant to her will executed in February 1994, she left $50,000 to David, with the residue of the estate to go to The Columbus Jewish Foundation. Eileen's Will was presented for probate in Los Angeles County on

4

February 14, 2008, and probate was opened by order dated April 18, 2008, naming Diane Sater as executrix.

6.      *David's Claim Against Eileen's Estate*

On April 2, 2008, one year and one day after Eileen's death, David filed a claim against her estate, alleging breach of contract based on Eileen's oral promise to give him a life estate in the condo.  The executrix denied the claim on May 13, 2008.

On May 30, 2008, David filed a petition to confirm interest in real property, asserting that pursuant to the resulting trust doctrine, the executrix of Eileen's estate was required to convey a life estate in the condo to him.  On July 24, 2008, the executrix objected to the petition, alleging the facts did not support a resulting trust.  The objection did not raise the statute of limitations as a defense.

7.      *Motion to Amend Pleadings*

On September 19, 2011, the executrix moved to amend her objection to David's petition to assert a statute of limitations defense under sections 366.2 and 336.3.[4]  At the same time, the executrix moved for judgment on the pleadings, asserting that David's petition was barred by the one-year statutes of limitations in section 366.2 and 366.3 which apply to creditors' claims against estates and promises to distribute estate property.

David's opposition asserted that petitions seeking to enforce rights under the resulting trust doctrine are subject to the four-year statute of section 343 because

---

[4] Section 366.2, subdivision (a) provides:  "If a person against whom an action may be brought on a liability of the person, whether arising in contract, tort, or otherwise, and whether accrued or not accrued, dies before the expiration of the applicable limitations period, and the cause of action survives, an action may be commenced within one year after the date of death, and the limitations period that would have been applicable does not apply."

Section 366.3, subdivision (a) provides:  "If a person has a claim that arises from a promise or agreement with a decedent to distribution from an estate or trust or under another instrument, whether the promise or agreement was made orally or in writing, an action to enforce the claim to distribution may be commenced within one year after the date of death, and the limitations period that would have been applicable does not apply."

5

resulting trusts are not based on creditor's claims or a promise to distribute estate property.

On October 20, 2011, the first day of trial, the trial court ruled that under *Estate of Yool* (2007) 151 Cal.App.4th 867, David's resulting trust claim did not assert an oral promise or agreement and therefore fell outside section 366.3 and was under section 343's four-year statute of limitations. The trial court granted the motion to amend but denied the motion for judgment on the pleadings.

> 8.    *Trial and Trial Court Ruling*

The trial court found the record was "replete with testimony from multiple sources that it was Eileen's intention that David be allowed to live in the Condo for the rest of his life." The court found "Eileen purchased the Condo . . . in 2003 as part of an express agreement [with David made] in 2000 that he [would] sell his . . . home in Santa Monica . . . and move back to Ohio [to care for] Wilma, and that in return Eileen would . . . purchase [another] residence [in Santa Monica] for David"; "David testified that Eileen told him . . . the Condo was [his] '[un]til the day you die'"; although the executrix disputed the evidence, she offered no evidence contradicting Eileen's stated intention that David live in the condo for the rest of his life. On the other hand, the court recognized that Wilma loaned David $100,000 for the purchase of the Fifth Street house, title to the premises was taken in Wilma's name, Wilma never intended to transfer title to David, Wilma's will provided that all assets, including the Fifth Street house, would be devised to Eileen and specifically disinherited David, Wilma's accountants treated the house as if it belonged to Wilma—all facts which supported the conclusion that Wilma did not give the Fifth Street house to him.

Nonetheless, the court found David's $30,000 investment in the Fifth Street house had appreciated by the time the Fifth Street house was sold in 2000; after its sale, Eileen opened a separate bank account into which at least $150,000 was deposited, left untouched, and not used until the 2003 purchase of the condo. Although these proceeds could not be definitively traced to the sale of the Fifth Street house, the court found the

6

timing of the deposits and withdrawals supported the conclusion the funds were held for David.

The court concluded that: (1) there was an agreement between David and Eileen formed in 2000 that David would sell the Fifth Street house and move back to Ohio to help Eileen care for Wilma, and the proceeds of the sale of the Fifth Street house would be used to buy another residence for David in Santa Monica; (2) David and Eileen performed their promises under this agreement, and purchased the condo in 2003; (3) David contributed a minimum of $30,000 to the condo purchase; and (4) Eileen's intention at the time of the purchase of the condo was that David reside in it for the rest of his life. Therefore, the court held there was a resulting trust to provide David a life estate in the condo.

The court ordered the executrix to take the necessary steps to provide David with a life estate in the condo, and upon David's death, transfer the remainder interest to the Foundation.

DISCUSSION

The executrix argues that (1) section 366.3 applies to express and resulting trusts; (2) section 366.2 also bars David's action; (3) the evidence does not support a resulting trust; (4) the trial court should have ordered the executrix to execute a life estate deed in David's favor and a remainder deed in the Foundation's favor.

## I. The Four-year Statute of Section 343 Applies

### A. *Resulting Trusts*

"When a transfer of real property is made to one person, and the consideration therefor is paid by or for another, a trust is presumed to result in favor of the person by or for whom such payment is made. 'The trust that is "presumed to result" from this situation is termed a "resulting trust"; its purpose is to enforce the intentions of the parties.'" (*In re Marriage of Ruelas* (2007) 154 Cal.App.4th 339, 342.) A resulting trust "arises by operation of law, without an expressed intent, and . . . the resulting trustee has no duty other than to transfer the property to the person entitled." (*Ibid.*)

7

Where the resulting trust involves real property, the presumption of Evidence Code section 662 that "[t]he owner of the legal title to property is presumed to be the owner of the full beneficial title [and] [t]his presumption may be rebutted only by clear and convincing proof" comes into play. "Under [this] 'form of title' presumption, the description in a deed as to how title is held presumptively reflects the actual ownership status of the property." (*In re Marriage of Fossum* (2011) 192 Cal.App.4th 336, 344.) The presumption is overcome "by evidence of an agreement or understanding between the parties that the title reflected on a deed is not what the parties intended." (*Id*. at p. 345.) By establishing a resulting trust, a party may overcome the presumption of Evidence Code section 662. (See *Lloyds Bank California v. Wells Fargo Bank* (1986) 187 Cal.App.3d 1038, 1044–1045.)

The applicable statute on a claim of resulting trust is the four-year statute of section 343. The statute does not begin to run until demand has been made on the trustee and the trustee refuses to account for the property or convey it. (*Estate of Yool* (2007) 151 Cal.App.4th 867, 875.)

### B.     Section 366.2

In *Estate of Yool*, *supra*, 151 Cal.App.4th 867, the decedent held real property in her name to facilitate financing for her daughter. The decedent gave no consideration for the property and never intended to acquire a beneficial interest in it. (*Id.* at p. 871.) *Estate of Yool* held that the one-year statute of section 366.2 did not apply to the resulting trust in which the property was held. (*Estate of Yool*, at p. 875.)

*Estate of Yool* noted that the statute referred to "liability of the person," thus requiring the decedent to be personally liable to the claimant for the statute to apply. A claim for the imposition of a resulting trust was not a claim upon which the decedent would be personally liable because personal liability required that the claimant be able to seek satisfaction of the debt from the assets of the decedent. By definition, a resulting trust did not and could not contain assets of the decedent. "[T]he [resulting] trustee holds title, *but does not own* the property in question, [and thus] there is no issue of personal

8

liability or resort to the trustee's assets.  A resulting trust arises by operation of law [citation] and does not implicate the personal liability of the purported trustee.  Rather, the trustee's sole purpose is to hold or convey the property according to the beneficiary's demands." (*Estate of Yool*, *supra*, 151 Cal.App.4th at pp. 875–876.)

In further support of its conclusion, *Estate of Yool* observed that the legislative history of section 366.2 made clear that it applied to debts, namely, claims resulting from the relationship between debtor and creditor.  In addition, by its nature, the resulting trust at issue in *Estate of Yool* had not yet been repudiated at the time of the decedent's death and hence no cause of action had accrued.  "The mere lapse of time, without repudiation, does not affect the beneficiary's rights." (*Estate of Yool*, *supra*, 151 Cal.App.4th at p. 876.)

### C.     Section 366.3

Section 366.3, by its terms, generally applies to express promises made by a decedent to award an individual an asset or a sum of money from the decedent's estate. (See *Maxwell-Jolly v. Martin* (2011) 198 Cal.App.4th 347, 359–360; *Ferraro v. Camarlinghi* (2008) 161 Cal.App.4th 509, 555 [section 366.3 intended "to reach any action predicated upon the decedent's agreement to distribute estate or trust property in a specified manner"].)  Thus, section 366.3 applies to a decedent's oral agreement to leave cohabitant life estate in shared home (*McMackin v. Ehrheart* (2011) 194 Cal.App.4th 128, 135); a decedent's written promise to leave house to neighbors who cared for him in final years (*Estate of Ziegler* (2010) 187 Cal.App.4th 1357, 1360–1361); a decedent's oral promise to stepdaughter of half of the marital residence he had shared with her predeceased mother (*Stewart v. Seward* (2007) 148 Cal.App.4th 1513, 1516, 1522–1523); and a husband's promise in written marital settlement agreement to establish a trust to continue paying spousal support to his ex-wife if he predeceased her (*Embree v. Embree* (2004) 125 Cal.App.4th 487, 490.)  No case has analyzed whether section 366.3 applies to resulting trusts.

### D. *Analysis*

Whether either section 366.2 or 366.3 bars David's claim is a legal issue which we review de novo. (*Stoltenberg v. Newman* (2009) 179 Cal.App.4th 287, 292.)

Here the executrix argues that section 366.3 applies here because it expressly applies to "trusts" and does not differentiate between express and resulting trusts, and because David argues that he is entitled to a distribution of a life estate from Eileen's estate by virtue of an oral trust agreement with her, his claim is squarely within the statute. Further, under *Estate of Ziegler*, *supra*, 187 Cal.App.4th 1357, she argues David's claim fails because there the claimant similarly attempted to argue his claim did not apply to property of the estate because his interest vested immediately upon the death of the decedent, yet the court found a claim for a distribution of a life estate is subject to 366.3. In addition, the executrix argues section 366.2 bars David's claims because Eileen considered the condo to be her property, thus repudiating David's claim before her death and starting the running of the statute during her lifetime.

We reject the executrix's arguments because they are all based upon the premise that David was seeking a distribution of property of the estate. For the same reasons that *Estate of Yool* declined to apply section 366.2 to resulting trusts, section 366.3 likewise does not apply. Section 366.3 applies to "a promise or agreement with a decedent to distribution from an estate or trust or under another instrument." The operative words are "distribution from an estate": a resulting trust is not a distribution from an estate. Here, as discussed *post*, the evidence supports the conclusion that title to the condo, while legally vested in Eileen, was held in trust for David under the resulting trust doctrine. Thus, David's claim sought to compel Eileen's executor to convey what he already owned in accordance with David and Eileen's oral trust agreement—namely, David's life estate. The fact that the parties had an agreement for the creation of David's life estate does not bring his claim within the language of section 366.3 referring to "agreements." Rather, as the resulting trust doctrine acknowledges, it is axiomatic that the property held

10

in the resulting trust resides there based upon the agreement of the parties, and particularly based on the intent of the transferee to hold the property for another.

Further, the cases on which the executrix relies that apply section 366.3 do not change this result, as they all involved claims to property of the decedent's estate, not resulting trusts. In *Estate of Ziegler*, *supra*, 187 Cal.App.4th 1357, the decedent gave a neighbor a letter signing over his home to the neighbor in exchange for the neighbor's provision of care and meals. (*Id.* at p. 1361.) More than one year after the decedent's death, the neighbor filed a creditor's claim for services rendered on a quantum meruit theory and breach of contract for the value of the house. (*Id.* at p. 1362.) The *Ziegler* court found the neighbor's claims barred by section 366.3 because the claim was indistinguishable from a contract to make a will, and was a promise to transfer property on death. As the contract could only be performed after death by conveying property that otherwise belonged to the decedent's estate. (*Id.* at p. 1365.) To the contrary here, David does not seek conveyance of property that otherwise belongs to Eileen's estate; rather, he seeks conveyance of a property interest that belongs to him which is held in Eileen's name. In *McMackin v. Ehrheart*, *supra*, 194 Cal.App.4th 128, the plaintiff lived with the decedent, who was intestate, for approximately 17 years until her death in 2004. The plaintiff remained in the house and three years later, the decedent's heirs attempted to evict him. Plaintiff filed a claim seeking a life estate in the decedent's home. (*Id.* at p. 131.) The court, applying *Ziegler*, concluded the plaintiff's claim for a life estate, given in consideration for "'love, affection, care and companionship,'" arose from "a decedent's promise of a distribution from an estate, and accordingly, is a claim for distribution within the meaning of section 366.3." (*McMackin*, at p. 139.) Here, because *McMackin* did not involve a resulting trust, the only similarity of David's claim with the claim in *McMackin* is that David also seeks a life estate. However, David's life estate claim is not based upon the assertion that Eileen promised to leave him the condo; rather, it is based upon his monetary contributions to the Fifth Street house, tracing those funds

11

to the condo purchase, and Eileen's intent in holding the condo for him although she took title in her own name.

## II.     Sufficient Evidence of Resulting Trust Through Tracing

The executrix argues that the evidence does not support a resulting trust because (1) Wilma never agreed that David would own the Fifth Street house in perpetuity, thus negating the required element of a resulting trust in the sales proceeds; (2) David's $30,000 contribution to the Fifth Street house was made after its purchase; (3) the trial court did not explain how this investment became the much larger sum of money Eileen placed on deposit on his behalf; (4) the hearsay testimony of Stoner and Burden regarding Wilma's intentions with respect to the Fifth Street house, to which the executrix objected  cannot support the finding that there was a gift of Wilma's interest to David, and no hearsay exception applies.  David counters that he did not have to prove a resulting trust interest in the Fifth Street house, but the condo; on that point, he established an agreement with Wilma and Eileen that the proceeds of sale of the Fifth Street house would be held for him by Eileen in a separate account.

### A.     Standard of Review

In a bench trial, "the trial court is the sole arbiter of the facts" and our review of its factual findings is limited.  (*Navarro v. Perron* (2004) 122 Cal.App.4th 797, 803.)  "'"[A]ny conflict in the evidence or reasonable inferences to be drawn from the facts will be resolved in support of the determination of the trial court decision."'"  We "'"consider all of the evidence in the light most favorable to the prevailing party, giving it the benefit of every reasonable inference, and resolving conflicts in support of the [findings]. [Citations.]" [Citation.]  We may not reweigh the evidence and are bound by the trial court's credibility determinations.  [Citation.]  Moreover, findings of fact are liberally construed to support the judgment.'"  (*Cuiellette v. City of Los Angeles* (2011) 194 Cal.App.4th 757, 765.)  "The substantial evidence standard of review applies to both express and implied findings of fact made by the court in its statement of decision. [Citation.]"  (*Ermoian v. Desert Hospital* (2007) 152 Cal.App.4th 475, 501.)

### B.      Tracing

"[A] resulting trust, like an express trust, is based on the manifestation of intention of the person creating it." (*Majewsky v. Empire Const. Co., Inc.* (1970) 2 Cal.3d 478, 485.) "[A] 'resulting trust is not founded on the simple fact that money or property of one has been used by another to purchase property. It is founded on a relationship between the two, on the fact that as between them, consciously and intentionally, one has advanced the consideration wherewith to make a purchase in the name of the other. The trust arises because it is the natural presumption in such a case that it was their *intention* that the ostensible purchaser should acquire and hold the property for the one with whose means it was acquired.' [Citations.]" (*Ibid.*) In *Baskett v. Crook* (1948) 86 Cal.App.2d 355, 362, the court stated that to establish a resulting trust, "[i]t is necessary to show that it was the *intention* of the parties to create the trust. . . . The amount of money contributed to the particular property by the claimant must definitely appear to enforce a resulting trust in his favor."

Here, to claim a life estate by virtue of a resulting trust in the condo, David must establish an interest in two properties in which title was held by other persons. Thus, David had to show both the Fifth Street house and the condo were resulting trusts. This he has done, even without considering the objectionable hearsay evidence from Wilma's accountant and attorney. David testified that he contributed a total of $35,000 to the Fifth Street house, Wilma contributed $100,000, and that Wilma's contribution started as a loan and later turned into a gift or advancement on his inheritance from her, establishing that the entirety of funds used to purchase the Fifth Street house were David's funds. David testified that he considered the house to be his.

Second, the parties intended that the proceeds of the sale of the Fifth Street house would be placed in an account for David in consideration of his return to Ohio to care for Wilma, and upon her death, a home in California would be purchased for David using those funds. The nearly simultaneous placement of those funds into a segregated account and their withdrawal at the time of the purchase of the condo is sufficient evidence of

tracing that establishes the condo was purchased with David's monies, although title was held by Eileen, and Eileen intended that David was the true owner of the condo.

## III. Remedy

The executrix points out that the trial court's remedy ordering her to give David a life estate and to transfer the property to the Foundation on his death would require her to keep the estate open until David's death. She requests that we modify the judgment to order that she execute a life estate deed in David's favor with a remainder deed in the Foundation's favor. David concedes this point, and we agree.

## DISPOSITION

The judgment is modified to reflect that the executrix is ordered to execute a life estate deed in the Santa Monica condo in David Belmont's favor, with a remainder deed in favor of The Columbus Jewish Foundation. In all other respects, the judgment is affirmed. David Belmont is to recover his costs on appeal.

NOT TO BE PUBLISHED.


JOHNSON, J.


We concur:


MALLANO, P. J.


CHANEY, J.

14