[No. A128711. First Dist., Div. Two. Aug. 11, 2011.]

DAVID MAXWELL-JOLLY, as Director, etc., Plaintiff and Respondent, v. JENNIFER C. MARTIN et al., Defendants and Appellants.

 

Counsel

Scampini Mortara & Harris, Haig A. Harris, Jr., and Neil S. Turner for Defendants and Appellants.

Edmund G. Brown, Jr., and Kamala D. Harris, Attorneys General, Douglas M. Press, Assistant Attorney General, Karin S. Schwartz and Hadara R. Stanton, Deputy Attorneys General, for Plaintiff and Respondent.

## Opinion

**RICHMAN, J.**—This case presents one purely legal question: which statute of limitations applies when a person who received health care services funded by Medi-Cal during her or his lifetime dies with assets held in trust, and the State Department of Health Care Services (DHCS) seeks to recover the Medi-Cal payments from the trustee and distributees of the trust. Appellants, the trustee and distributees of the trust, contend that the one-year statute of limitations in Code of Civil Procedure section 366.3 applies,[1] as it governs claims that arise "from a promise or agreement with a decedent to distribution from an estate or trust or under another instrument . . . ." (*Id.*, subd. (a).) Respondent, the Director of the DHCS (Director), contends that the three-year statute in section 338, subdivision (a) applies, as it governs actions "upon a liability created by statute." We conclude that the Director is correct, and thus affirm the summary judgment.

### FACTUAL AND PROCEDURAL BACKGROUND

The material facts are not in dispute. Decedent Bunnie R. Gregoire owned a home in Brisbane, which she transferred into a restated revocable trust on July 18, 1997. Under the terms of the trust, the assets remaining at her death were to be divided equally between two of her grandchildren, appellants Selena H. Firth and Jennifer C. Martin, to be held in trust until their 35th birthdays. The trustee was given the discretionary power to make an earlier distribution to either granddaughter for her "health, education, support and maintenance."

---

[1] Statutory references, unless otherwise designated, are to the Code of Civil Procedure.

In approximately April 2001, Gregoire was admitted to St. Francis Convalescent Pavilion, a skilled nursing facility. On December 10, 2001, Firth applied for Medi-Cal benefits on behalf of her grandmother, who was then nearly 90 years old. As part of the application process, Firth signed forms acknowledging on Gregoire's behalf, "After my death, the State has the right to seek reimbursement from my estate for all Medi-Cal benefits I received after age 55 . . . ." This obligation of reimbursement arose from Welfare and Institutions Code section 14009.5[2] and California Code of Regulations, title 22, section 50961.[3] Gregoire thereafter received Medi-Cal payments totaling $237,939.18 to cover the cost of her nursing home care.

---

[2] Welfare and Institutions Code section 14009.5 provides as follows:

"(a) Notwithstanding any other provision of this chapter, the department shall claim against the estate of the decedent, or against any recipient of the property of that decedent by distribution or survival an amount equal to the payments for the health care services received or the value of the property received by any recipient from the decedent by distribution or survival, whichever is less.

"(b) The department may not claim in any of the following circumstances:

"(1) The decedent was under 55 when services were received, except in the case of an individual who had been an inpatient in a nursing facility.

"(2) Where there is any of the following:

"(A) A surviving spouse during his or her lifetime. However, upon the death of a surviving spouse, the department shall make a claim against the estate of the surviving spouse, or against any recipient of property from the surviving spouse obtained by distribution or survival, for either the amount paid for the medical assistance given to the decedent or the value of any of the decedent's property received by the surviving spouse through distribution or survival, whichever is less. Any statute of limitations that purports to limit the ability to recover for medical assistance granted under this chapter shall not apply to any claim made for reimbursement.

"(B) A surviving child who is under age 21.

"(C) A surviving child who is blind or permanently and totally disabled, within the meaning of Section 1614 of the federal Social Security Act (42 U.S.C.A. Sec. 1382c).

"(3) Any exemption described in paragraph (2) that restricts the department from filing a claim against a decedent's property shall apply only to the proportionate share of the decedent's estate or property that passes to those recipients, by survival or distribution, who qualify for an exemption under paragraph (2).

"(c)(1) The department shall waive its claim, in whole or in part, if it determines that enforcement of the claim would result in substantial hardship to other dependents, heirs, or survivors of the individual against whose estate the claim exists.

"(2) The department shall notify individuals of the waiver provision and the opportunity for a hearing to establish that a waiver should be granted.

"(d) The following definitions shall govern the construction of this section:

"(1) 'Decedent' means a beneficiary who has received health care under this chapter or Chapter 8 (commencing with Section 14200) and who has died leaving property to others either through distribution or survival.

"(2) 'Dependents' includes, but is not limited to, immediate family or blood relatives of the decedent."

[3] California Code of Regulations, title 22, section 50961 provides in pertinent part: "(a) The Department shall claim against the estate of a decedent, or against any recipient of the decedent's property by distribution or survival, an amount equal to the lesser of: [¶] (1) All

On October 24, 2002, the San Mateo County Public Guardian (Public Guardian) was appointed conservator of the person and estate of Gregoire.

Gregoire died on November 10, 2005. On November 15, the Public Guardian sent a notice of death to respondent DHCS in Sacramento recording the value of Gregoire's estate as "0.00." On November 23, 2005, a DHCS employee discovered conflicting information in that Westlaw showed Gregoire owned the house in Brisbane. The computer entry noted that a "case" was being "set[] up."

On December 20, 2005, DHCS sent a questionnaire to the Public Guardian inquiring about assets held by Gregoire. The response indicated a zero value for all assets other than "house/land/mobile home," which was left blank. The names of heirs and co-owners were also left blank.

On February 8, 2006, DHCS gave notice to the Public Guardian of its creditor's claim against the estate in the amount of $237,939.18.

On June 15, 2006, appellant George Mousetis signed a certification that he was successor trustee of the revocable trust. The certification was recorded July 7, 2006.

On the same date, July 7, 2006, Mousetis sold the Brisbane home for $700,000. Ten days later he wired half the net proceeds to Martin ($313,740.84), retaining the other half in trust for Firth. Over the succeeding years all of the funds held in trust have been distributed to Firth under the trustee's discretionary powers.

Having received no response to its February 2006 notice of its claim against the estate, DHCS followed up with status requests to the Public Guardian on September 21, 2006, and March 27, 2007. Unbeknownst to DHCS, the trustee had already sold the property.

On April 4, 2007, the Public Guardian called DHCS and reported there were no assets in the conservatorship but there was real property held in trust. At that time DHCS was also given the name and contact information for the successor trustee. On April 5, 2007, DHCS advised the trustee of its claim against the estate. Having received no response, DHCS followed up with letters to the trustee and his attorney on July 13, 2007.

DHCS claims the trustee was aware of or on notice that Gregoire's estate was liable for reimbursement of Medi-Cal benefits she had received, whereas

payments made by the Medi-Cal program on behalf of the decedent . . . ; or, [¶] (2) The decedent's equity interest in the property . . . ."

appellants claim there is "not one sh[r]ed of evidence" that any of the defendants knew there was a claim for recovery of benefits. This factual dispute is not material to our decision.

On November 10, 2008, three years after Gregoire's death, respondent Director filed a complaint seeking reimbursement of all Medi-Cal benefits paid on behalf of Gregoire during her lifetime. In an amendment to their answer, appellants asserted a defense that the claim was time-barred under section 366.3.[4]

On December 3, 2009, respondent filed a motion for summary judgment or, in the alternative, summary adjudication. The dispute boiled down to the purely legal question whether the case was governed by the one-year statute of limitations under section 366.3 or the three-year statute of limitations of section 338, subdivision (a).[5]

The motion was heard on February 18, 2010. On March 4, 2010, the trial court entered an order granting the Director's motion for summary judgment. The court ruled in the Director's favor because "[t]he three-year statute of limitations, [Code of Civil Procedure] Section 338(a), applies to a Welfare & Institutions Code Sec. 14009.5 claim. [*Begil, supra*,] 128 Cal.App.4th 639. While defendants attempt to characterize the complaint as contractual, the Department's claim under the complaint is statutorily-based."

Judgment was entered in the Director's favor on April 9, 2010. This timely appeal followed.

## DISCUSSION

Appellants claim the statute of limitations under section 366.3 governs this case because the Director's claim arises from "a promise or agreement with a decedent to distribution from an estate or trust."[6] Respondent claims section

---

[4] Appellants do not claim that the complaint was untimely if a three-year statute applies. The statute of limitations begins to run when DHCS receives notice of the Medi-Cal recipient's death. (*Shewry v. Begil* (2005) 128 Cal.App.4th 639, 645 [27 Cal.Rptr.3d 209] (*Begil*).)

[5] Section 338, subdivision (a) provides that an action shall be brought "[w]ithin three years [in] [¶] (a) [a]n action upon a liability created by statute, other than a penalty or forfeiture."

[6] Section 366.3 provides as follows:

"(a) If a person has a claim that arises from a promise or agreement with a decedent to distribution from an estate or trust or under another instrument, whether the promise or agreement was made orally or in writing, an action to enforce the claim to distribution may be commenced within one year after the date of death, and the limitations period that would have been applicable does not apply.

338, subdivision (a) applies because the Director's right to reimbursement is a "liability created by statute." Our task is to determine which statute applies.

DHCS claims the dispute in this case was resolved by *Kizer v. Hanna* (1989) 48 Cal.3d 1, 6 [255 Cal.Rptr. 412, 767 P.2d 679] (*Hanna*) and *Begil, supra*, 128 Cal.App.4th at page 644. Appellants claim it is an issue of first impression. They are both right. Conceptually, *Hanna* and *Begil* lead to a clear resolution of the issue, but no other case has ruled on the potential applicability of section 366.3 in the context of DHCS claims for Medi-Cal reimbursement.

Our review of this issue, which involves a pure question of law, is de novo. (*Begil, supra*, 128 Cal.App.4th at p. 642.) Ultimately, the question is whether there is a triable issue as to any material fact, and whether DHCS is entitled to judgment as a matter of law. (*Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 843 [107 Cal.Rptr.2d 841, 24 P.3d 493].)

*Medi-Cal recovery statute of limitations prior to 2001*

■ California participates in the federal Medicaid program and must comply with the Medicaid Act in exchange for federal contributions to the cost of care provided to needy individuals. (42 U.S.C. § 1396a.) The Medicaid Act provides that applicants may qualify for Medicaid benefits if they are aged, blind, or disabled and their income and resources are insufficient to meet the costs of health care. (42 U.S.C. § 1396-1.) If the applicant is over the age of 55, his or her principal residence is excluded when determining eligibility. This allows elderly applicants, despite having a valuable asset, to qualify for Medicaid covered services. (42 U.S.C. § 1382b(a)(1).) In exchange, federal law requires that the state recover all or a portion of the Medicaid benefits paid during the recipient's lifetime from his or her estate at death. (42 U.S.C. § 1396p(b)(1); see generally *California Advocates for Nursing Home Reform v. Bonta´* (2003) 106 Cal.App.4th 498, 508–509 [130 Cal.Rptr.2d 823].)

■ In compliance with federal law, state law also requires the Director to seek reimbursement from the deceased recipient's estate or from recipients of property from the decedent by distribution or survival. (Welf. & Inst. Code, § 14009.5, subd. (a).) This requirement is expressed in mandatory terms. Property once held by the decedent and transferred to heirs by a trust is part

"(b) The limitations period provided in this section for commencement of an action shall not be tolled or extended for any reason except as provided in Sections 12, 12a, and 12b of this code, and former Part 3 (commencing with Section 21300) of Division 11 of the Probate Code, as that part read prior to its repeal by Chapter 174 of the Statutes of 2008.

"(c) This section applies to actions brought on claims concerning persons dying on or after the effective date of this section."

of the decedent's estate and is subject to recovery under the same statute. (*Belshé v. Hope* (1995) 33 Cal.App.4th 161, 164 [38 Cal.Rptr.2d 917].)

■ *Begil, supra,* 128 Cal.App.4th at page 644, specifically held that section 338, subdivision (a) applies to Medi-Cal recovery actions, rejecting the notion that section 366.2 should govern because that section applies only to actions that could have been maintained against the decedent during his or her lifetime.[7] (*Begil,* at p. 644.) Thus, it was clear at least then that a three-year statute of limitations governed actions such as that here. (See also *Shewry v. Wooten* (2009) 172 Cal.App.4th 741, 747, fn. 11 [91 Cal.Rptr.3d 199] [applying three-year statute of limitations in accordance with *Begil*].)

*The enactment of section 366.3 did not change the statute of limitations for Medi-Cal recovery*

Appellants acknowledge the holding of *Begil* and apparently do not disagree that a three-year statute of limitations applied to Medi-Cal recovery claims prior to January 1, 2001. Nevertheless, they insist that section 366.3, enacted in 2000, changed everything.[8] Appellants argue that section 366.3 was expressly intended to apply a uniform one-year statute of limitations to all actions arising out of a decedent's promise to make a payment out of his or her estate, even if pursued on a theory other than breach of contract. This

---

[7] Section 366.2, subdivision (a) limits a plaintiff's time for filing an action to one year after the date of death where the cause of action could have been brought during the decedent's lifetime: "If a person against whom an action may be brought on a liability of the person, whether arising in contract, tort, or otherwise, and whether accrued or not accrued, dies before the expiration of the applicable limitations period, and the cause of action survives, an action may be commenced within one year after the date of death . . . ." Though the legislative history of section 366.3 includes an intention to make the limitations period the same for the two statutes, that does not seem to have been the primary purpose of Assembly Bill No. 1491 (1999–2000 Reg. Sess.), and it also is quite clear that the earlier enacted section 366.2 was intended to cover a broader range of cases (i.e., those founded on "contract, tort, or otherwise"). The parties seem to agree that section 366.2 has no application to this case.

[8] Section 366.3 was enacted as part of a "regular omnibus probate law bill[] sponsored by the Estate Planning, Trust & Probate Law Section of the State Bar" to reform certain aspects of the Probate Code, and specifically to clarify the enforceability of no-contest clauses. (Concurrence in Sen. Amends. to Assem. Bill No. 1491 (1999–2000 Reg. Sess.) as amended Apr. 4, 2000, p. 3; see also *id.* at pp. 1–2.) While the bill added one section to the Code of Civil Procedure (i.e., § 366.3), it amended seven sections of the Probate Code, added one new section to the Probate Code, and repealed one section thereof. (Stats. 2000, ch. 17, p. 71.) "According to the sponsor, most of this bill is technical in nature and is designed to bring various Probate Code provisions into conformity with recent case developments." (Concurrence in Sen. Amends. to Assem. Bill No. 1491 (1999–2000 Reg. Sess.) as amended Apr. 4, 2000, pp. 3–4.) The bill met with no opposition and was passed by unanimous vote of both the Senate and Assembly. (Sen. Com. on Judiciary, Analysis of Assem. Bill No. 1491 (1999–2000 Reg. Sess.) as amended Mar. 23, 2000, p. 13; Assem. Bill No. 1491, 1 Assem. Final Hist. (1999–2000 Reg. Sess.) p. 1149.)

includes payments required by statute, such as the Medi-Cal reimbursement statute. They cite *Ferraro v. Camarlinghi* (2008) 161 Cal.App.4th 509 [75 Cal.Rptr.3d 19] (*Ferraro*), in which a family dispute over an estate, though framed in terms of fraud and conversion as well as breach of contract, was governed by section 366.3. As discussed below, we find *Ferraro* and the other cases cited by appellants to be significantly distinguishable from the case before us, in large part because they all involved an express promise, a promise distinctly lacking in this case.

■ Appellants argue that a more recently enacted statute of limitations will apply over an older, less specific statute. (E.g., *David M. v. Beverly Hospital* (2005) 131 Cal.App.4th 1272, 1279 [32 Cal.Rptr.3d 649].) We have no quarrel with that general proposition. The question, however, is whether section 366.3 was intended to cover claims by DHCS for reimbursement under Welfare and Institutions Code section 14009.5 at all. We conclude the answer is no.

Section 366.3 makes no reference at all to Medi-Cal recovery actions, nor does its legislative history suggest it was intended to cover such actions. Appellants seem to suggest that the purpose of section 366.3 was to provide a uniform statute of limitations for virtually all claims against an estate that arise only after death in order to encourage speedy settlement of estates and to avoid undue hardship to beneficiaries and trustees. But we see the statute as being of more limited scope. The analyses prepared for the committees and members of the Assembly uniformly explained that the bill "[m]akes various changes to the law governing contracts to make wills or trusts, 'no contest' clauses in such instruments, nomination of spouses as conservators, and jury trial rights in conservatorship cases." (Concurrence in Sen. Amends. to Assem. Bill No. 1491 (1999–2000 Reg. Sess.) as amended Apr. 4, 2000, p. 1; see Assem. Com. on Judiciary, Analysis of Assem. Bill No. 1491 (1999–2000 Reg. Sess.) as amended Jan. 3, 2000, p. 1.)

With respect to the statute of limitations section of the bill, the legislative history noted, "Existing law . . . [¶] . . . [¶] . . . [d]oes not provide a uniform statute of limitations for claims arising from a contract to make a will or other promise or agreement with a decedent to a distribution from an estate or trust." (Assem. Com. on Judiciary, Analysis of Assem. Bill No. 1491 (1999–2000 Reg. Sess.) as amended Jan. 3, 2000, p. 3.) The same analysis explained further, "Current law has an uncertain statute of limitations in regard to equitable and contractual claims to distribution of estates. In some cases, the statute may run three years from discovery of the action or four years under a contract theory. [¶] Section 1 of the bill establishes a one-year statute of limitations for the enforcement of these claims, consistent with the current limitations period for claims against a decedent. (See Code of Civil

Procedure section 366.2.) According to the sponsor, '[t]he consistency of the new statute of limitations with the current statute regarding claims against a decedent will also give greater assurance to fiduciaries who are attempting to administer estates.' " (*Id.* at p. 4, underscoring omitted.)

The Senate analysis also supports the view that the reason for the new statute of limitations was more to clarify ambiguities and discrepancies in existing law than to shorten the statute of limitations per se: "Existing law specifies the statute of limitations applicable to a claim against a decedent's estate based upon a contract to make or to revoke a will or trust as three years from discovery of the action, or four years from the date of the contract or instrument in writing. (Probate Code Section 150.) [¶] Existing case law has interpreted these statutes, as they apply to contracts to make or revoke wills or trusts, to be one year from the date of death. [¶] This bill would establish the statute of limitations to file a claim for distribution of an estate under any instrument or an equitable estoppel theory as one year from the date of decedent's death, which may not be tolled except for a 'no contest' action. The bill would apply only to actions brought on claims concerning persons dying after the effective date of the bill." (Sen. Com. on Judiciary, Analysis of Assem. Bill No. 1491 (1999–2000 Reg. Sess.) as amended Mar. 23, 2000, pp. 2–3, underscoring omitted.) In sum, the legislative history makes clear that a uniform statute of limitations was sought for both oral and written contracts to make a will or trust (or to refrain from doing so), and that a short limitations period was seen as beneficial to promote the prompt settlement of estates and to conform the limitations period for such claims to the same one-year period that applies to claims that could have been asserted against the decedent during his or her lifetime. (*Id.* at pp. 11–13.)

We see nothing in the legislative history to support the view advanced by appellants that the purpose of the new statute of limitations was to bring *all* claims against the decedent's estate that arose at death under a single one-year statute of limitations.[9] The bill which resulted in the enactment of section 366.3 was much more limited as to the scope of the new limitations provision, linking that provision to other changes in law under the Probate

---

[9] The Legislative Counsel's Digest of Assembly Bill No. 1491 (6 Stats. 2000 (1999–2000 Reg. Sess.) Summary Dig., p. 7) described the changes to the statute of limitations as follows: "Existing law provides that a person wishing to bring a cause of action against a deceased person for liability arising under contract, tort, or otherwise, has one year from the date of death to do so, with certain exceptions. [¶] This bill would provide that a person with a claim arising from an agreement with a decedent, whether oral or written, for distribution from an estate or trust would also have one year within which to commence an action to enforce the claim, with certain exceptions." Thus, it is clear that the new statute of limitations under section 366.3 was intended to apply only to a more limited universe of claims than those covered by section 366.2, namely those "that arise[] from a promise or agreement."

Code, and applying the new statute of limitations only to claims "that arise[] from a promise or agreement" of the decedent.

In *Hanna, supra,* 48 Cal.3d at page 3, the Supreme Court held that DHCS could claim reimbursement of Medi-Cal payments made prior to the effective date of Welfare and Institutions Code section 14009.5, so long as the recipient died after its effective date. Yet it may be inferred from the opinion that the decedent was not even notified, much less had agreed, that such Medi-Cal benefits could be reclaimed from her estate after death. (48 Cal.3d at pp. 4–5.) This suggests the statute operates independently of any "promise" or "agreement" by the Medi-Cal recipient to reimburse the DHCS.

Appellants acknowledge the recipient's obligation to reimburse the state for Medi-Cal payments derives from a statute. They nevertheless claim that the one-year statute of limitations should apply because the obligation only arises if the Medi-Cal recipient "agreed" to accept Medi-Cal payments on the terms offered, and in that context impliedly "agreed" to reimburse the state from his or her estate after death. This, they claim, makes an action for Medi-Cal recovery one based on the "promise or agreement" of the decedent. Such a construction is untenable in light of the Supreme Court's holding in *Hanna.*

*The Director's claim arose from statute, not from a promise by Gregoire to make a distribution from her trust*

Appellants quote fragments of the paperwork completed in connection with Gregoire's Medi-Cal claim to the effect that Gregoire "agree[d]" that "[a]fter [her] death, the State has the right to seek reimbursement from [her] estate for all Medi-Cal benefits [she] received after age 55 unless [she had] a surviving spouse (during his or her lifetime), minor children, blind or permanently and totally disabled children, or it would create a hardship for [her] heirs." But this textual argument is unavailing. The written "agreement" that appellants refer to is nothing more than a government document prepared for the evident purpose of notifying Medi-Cal applicants of the statutory right of the DHCS to seek reimbursement from a recipient's estate.

The "I agree" sentence appears on a different page from the reimbursement paragraph. The full sentence is, "I am aware of, understand, and agree to meet all my responsibilities as described on the MC 219." The paragraph summarizing the state's right to reimbursement appears in a separate document designated MC 219, evidently attached to—or provided to the applicant before he or she signs—the application for benefits. The right to reimbursement paragraph is numbered 15 in a list of preprinted rules relating to the

administration of the Medi-Cal program entitled, "Important Information for Persons Requesting Medi-Cal."[10]

The "agreement" of the Medi-Cal recipient, as quoted above, is to "meet all [his or her] responsibilities" as described in the MC 219. But the reimbursement paragraph does not describe a "responsibility" of the Medi-Cal recipient. Its language is not indicative of a *promise* by the applicant. On the contrary, that paragraph speaks of the *right* of the DHCS to seek reimbursement, which is provided by statute and exists independently of any "agreement" of the applicant or recipient. Certainly, just receiving notice of a statutory right of DHCS to seek reimbursement from the Medi-Cal recipient's estate does not convert the statutory right of the Director into a "promise or agreement" by the Medi-Cal recipient to make a "distribution" of a portion of his or her estate to DHCS. To endorse such a view would discourage governmental agencies from notifying consumers of their rights and responsibilities under the law.

Likewise, the Director's complaint seeking reimbursement made no reference to a "promise" or "agreement" of the decedent to pay the amount it claimed. Rather, it was entitled "Complaint to Enforce and Collect Money Due on Medi-Cal Creditor's Claim." It sought, on authority of Welfare and Institutions Code section 14009.5 and California Code of Regulations, title 22, section 50961, to "recover reimbursement" for the amounts it had previously paid for Gregoire's nursing home care. It made no mention of a promise or agreement and did not base the recovery action on any promise by Gregoire to allow the reimbursement action to proceed or to pay any specific or calculable amount out of her estate.

Indeed, appellants seem to admit in their opening brief that the Director's cause of action was *not* based on "[b]reach of a [w]ritten [a]greement." Instead they argue that Gregoire was not *required* to accept Medi-Cal payments, but rather *voluntarily* subjected herself to the statutory obligation of repayment by agreeing to accept Medi-Cal benefits in exchange for her "promise" to allow DHCS to recoup those payments from her estate after her death. But DHCS was statutorily entitled—indeed required—to recoup the benefits paid on Gregoire's behalf regardless of any "agreement" on her part.

At best, appellants put forth a theory of an implied-in-fact contract, comparing the statutory scheme to ordering a meal from a restaurant menu. They argue that they need not prove an "express" agreement in order to trigger the shorter statute of limitations. But we think the promise or

---

[10] It appears the MC 219 is a four-page document, but the parties have provided us only with the fourth page, which contains the reimbursement provision.

agreement must be express to come within section 366.3, as illustrated by *Ferraro, supra*, 161 Cal.App.4th 509, a case on which appellants rely. There, a husband and wife, each of whom had two children from previous marriages, agreed "orally and in writing" that the surviving spouse would leave all of the remaining assets to the four children in equal shares. (*Id.* at p. 519; see also *id.* at p. 517.) After the husband died, the wife made a will and trust leaving everything to her own two children. One of the husband's children, Patricia, filed an action within a year but her sister, Sandra, did not join in that action. Sandra was therefore named as a defendant and " 'necessary party.' " (*Id.* at p. 519.)

More than a year after the wife died, Sandra filed both a lawsuit and later a creditor's claim in probate proceedings initiated by her stepsister, seeking one-quarter of the total estate, asserting causes of action including breach of contract, fraud, and conversion. (*Ferraro, supra*, 161 Cal.App.4th at pp. 521, 527.) When the claim was rejected by the stepsister as administrator of the will, Sandra filed another civil action. (*Id.* at p. 527.) The administrator of the estate moved to strike the complaint based on, among other things, the statute of limitations. (*Ibid.*) The trial court granted the motion.

The Court of Appeal agreed that both lawsuits were untimely under section 366.3 because the action arose out of the wife's promise or agreement with her husband regarding the distribution of their estate. (*Ferraro, supra*, 161 Cal.App.4th at pp. 555–556.) Even though Sandra asserted tort causes of action in addition to a contract theory, the complaint still was founded on the broken promise. (*Id.* at p. 555.) The court held the intent of section 366.3 was "to reach any action predicated upon the decedent's agreement to distribute estate or trust property in a specified manner."[11] (161 Cal.App.4th at p. 555.) Such a situation is a far cry from the one before us. The agreement that formed the basis of Sandra's claims was an express agreement negotiated between husband and wife.

Likewise, other cases applying section 366.3 to bar a claim involved express promises made by a decedent to award an individual an asset or sum of money from his or her estate, in exchange for care rendered to the decedent or otherwise. (See, for example, *McMackin v. Ehrheart* (2011) 194 Cal.App.4th 128, 135 [122 Cal.Rptr.3d 902] [decedent orally agreed to leave cohabitant life estate in shared home]; *Estate of Ziegler* (2010) 187 Cal.App.4th 1357, 1360–1361 [114 Cal.Rptr.3d 863] [decedent made written promise to leave house to neighbors who cared for him in final years];

---

[11] Although Sandra had not filed suit within the one-year limitations period, since Patricia's action was timely filed and Sandra was an intended beneficiary of the alleged promise, "in contemplation of law, and whether or not she intended it, Patricia's complaint was an action to enforce [Sandra's] rights" as well as her own. (*Ferraro, supra*, 161 Cal.App.4th at p. 556.)

*Stewart v. Seward* (2007) 148 Cal.App.4th 1513, 1516, 1522–1523 [56 Cal.Rptr.3d 651] [decedent orally promised stepdaughter half of the marital residence he had shared with her predeceased mother but then left the entire estate to his grandchildren]; *Embree v. Embree* (2004) 125 Cal.App.4th 487, 490 [22 Cal.Rptr.3d 782] [husband promised in written marital settlement agreement to establish a trust to continue paying spousal support to his ex-wife if he predeceased her].) The statute provides that it covers promises or agreements "whether . . . made orally or in writing." The very fact that it specifies such methods of making express promises suggests it would not apply to an implied-in-fact agreement to make a distribution from a trust, if such a creature exists.

Appellants rely largely on *California Advocates for Nursing Home Reform v. Bonta´, supra*, 106 Cal.App.4th at pages 508–509 to support their implied-in-fact contractual claim. In that case, we considered whether certain policies and guidelines promulgated by DHCS were "regulations" subject to the Administrative Procedure Act (Gov. Code, § 11340 et seq.). (106 Cal.App.4th at p. 503.) In discussing the history and giving a broad overview of the Medicaid recovery statutes, we noted that such provisions do "not forcibly expose citizens to estate recovery. Persons subject to estate recovery receive notice of the estate recovery requirement before they decide whether to accept or reject Medicaid benefits." (*Id.* at p. 509.) This did not constitute a holding—or even a hint—that the Medi-Cal recovery program was a voluntary contractual arrangement.

On the contrary, the court in *Hanna* implicitly rejected any sort of contractual analysis by allowing DHCS to recoup Medi-Cal benefits paid prior to the effective date of Welfare and Institutions Code section 14009.5. (*Hanna, supra*, 48 Cal.3d at pp. 5, 8.) There, the executor had accepted the claim for benefits paid after the statute went into effect but rejected the claim insofar as it pertained to benefits paid earlier. (*Id.* at p. 4.) The Supreme Court acknowledged that prior to the enactment of Welfare and Institutions Code section 14009.5, "a welfare recipient was under no obligation to reimburse the state for public benefits legitimately obtained." (*Hanna*, at p. 8.) Had the claim been one based on a promise or agreement, the state certainly could not have claimed reimbursement of benefits paid before the effective date, when the deceased Medi-Cal recipient had no notice of the state's intention to seek reimbursement. Only if recovery of benefits paid is construed as the Director's statutory right, regardless of the consent or lack of consent of the Medi-Cal recipient, does the *Hanna* opinion make sense.[12] We therefore see

---

[12] In addition to its primary argument—that the Director seeks to enforce a statutory obligation, not a contractual one—DHCS argues that (1) the Director is not a "person" within the meaning of section 366.3 when he acts in his official capacity on behalf of DHCS and (2) the agreement, if it amounts to that, was not for a "distribution" from Gregoire's estate. In

the Medi-Cal recovery provision as one arising strictly from the statute " ' " 'in which no element of agreement enters.' " ' " (*Begil, supra,* 128 Cal.App.4th at p. 644.)

True, as appellants point out, Gregoire could have avoided the statutory obligation by declining Medi-Cal assistance during her lifetime. She could have sold her house and used the proceeds to pay for her own nursing home care. But this would have only left the distributees of her trust in worse shape than they now find themselves.

Had she sold her home in 2001 (when she first applied for Medi-Cal), she no doubt would have realized substantially less in net proceeds than did her estate in 2006 when the home was actually sold by the trustee. Whatever proceeds did exist in 2001 would have been further reduced by the amount Gregoire would have had to pay for nursing home care without Medi-Cal, presumably the same $238,000 that Medi-Cal expended for her care. The net effect would have been to reduce the estate ultimately passed on to her granddaughters by substantially more than the amount now claimed by DHCS, thus leaving a much smaller estate for the two granddaughters to share. Indeed, even if Gregoire had received Medi-Cal benefits during a declining housing market, because the home was held in trust it remained available to potentially generate rental income or to provide housing for Gregoire's loved ones during Gregoire's years in the nursing home.

We fail to see how this arrangement, which operated entirely to the benefit of Gregoire and her granddaughters, converted the state's statutory right of reimbursement into a voluntary contractual arrangement. The availability of a financially unsound and self-defeating alternative to Medi-Cal assistance does not transform the state's right to seek reimbursement of benefits into a Medi-Cal recipient's "promise or agreement" to make a "distribution" from his or her estate.

Appellants further argue the voluntary nature of the receipt of Medi-Cal benefits makes Welfare and Institutions Code section 14009.5 unlike other statutes that impose upon members of the public financial liability for certain expenses regardless of their consent. They give the example that drunk drivers are statutorily liable for the cost of emergency services necessitated by their negligence, regardless whether they were aware of or agreed to such liability. (E.g., Gov. Code, § 53150.) In such a case, appellants agree, the drunk driver's liability is wholly statutory in origin. They claim the Medi-Cal

---

light of our decision that the Director's right of reimbursement under Welfare and Institutions Code section 14009.5 is not contractual in nature, and our conclusion that section 338, subdivision (a) clearly prescribes the applicable limitations period, we need not discuss these additional arguments.

recovery statute is different because it does not come into operation unless the applicant *agrees* to accept Medi-Cal benefits.

The implementing provision of the drunk driving reimbursement statute declares, however, that the expense of emergency services "constitutes a debt of that person and is collectible by the public agency incurring those costs in the same manner as in the case of an obligation under a contract, expressed or implied, except that liability . . . shall not be insurable." (Gov. Code, § 53154.) This language shows that when the Legislature intends to make a statutory obligation enforceable as a contractual one it knows how to do so. The fact that no similar language appears in Welfare and Institutions Code section 14009.5 suggests it was intended to be purely a statutory right of the state to recover sums advanced for medical care, with no contractual element. Indeed, *Hanna* declared that the Medi-Cal reimbursement provision is a "creature of statute" which gave rise to a liability not otherwise enforceable against a recipient of public welfare benefits. (*Hanna, supra*, 48 Cal.3d at p. 5.)

Appellants further argue section 366.3 was intended to prevent "hardship to beneficiaries and administrators alike," and to avoid "frustrat[ing] the policy in favor of the early closing and distribution of estates." (See Sen. Com. on Judiciary, Analysis of Assem. Bill No. 1491 (1999–2000 Reg. Sess.) as amended Mar. 23, 2000, pp. 11, 12.) It is true this was mentioned in the legislative history as a salutary effect of the bill. But the main objective of the bill was to clarify the length of the statute of limitations for claims premised on a contract to make or not make a will or trust and to subject all such claims to the same limitations period.

*Hanna* recognized that it is not inherently unfair to heirs to require reimbursement of Medi-Cal benefits out of a deceased recipient's estate: "As a result of not having to sell [her] home, the estate of a deceased Medi-Cal recipient is greater than it might otherwise be. The reimbursement requirements of section 14009.5 thus seek from the *estate* only that which would not have existed but for the Medi-Cal program. Furthermore, as a result of Medi-Cal, the heirs are not required to bear the full burden of the recipient's medical care during the recipient's lifetime." (*Hanna, supra*, 48 Cal.3d at p. 6.) Thus, we see no basis for a claim of hardship or unfairness on the part of the distributees solely by application of a three-year statute of limitations. If the reimbursement requirement presents an actual substantial hardship for the heirs, the statute allows the Director to waive his claim against the estate. (Welf. & Inst. Code, § 14009.5, subd. (c)(1).)

■ Finally, appellants point to two Probate Code sections that provide a four-month period for the state to seek reimbursement of Medi-Cal benefits

after receipt of a notice of death under Probate Code section 215. (Prob. Code, §§ 9202, 19202.) These statutes pertain to the filing of claims with a trustee or personal representative. They do not govern the issue before us. The three-year statute of limitations under section 338, subdivision (a) prescribes the period in which the Director may file suit in the present circumstances.

## DISPOSITION

The judgment is affirmed.

Kline, P. J., and Lambden, J., concurred.