Filed 6/27/24; Certified for Publication 7/10/24 (order attached)

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Glenn)

----

| | |
|---|---|
| KATHLEEN SMITH et al., | C098169 |
|       Plaintiffs, Cross-defendants and Respondents, | (Super. Ct. No. 20PR01166) |
|    v. | |
| EMMA MYERS, as Trustee, etc., | |
|       Defendant, Cross-complainant and Appellant. | |

SUMMARY OF THE APPEAL

More than three years after the death of Ernest Myers, petitioners and appellees Kathleen and Bruce Smith filed a petition to confirm the validity of a 2016 amendment to a trust, which Ernest had established in 1992 and reestablished in 2000. Under the amendment, the Smiths would gain Ernest's 54.2 percent interest in real property in

1

which they already held a 45.8 percent interest. Without the 2016 amendment, the trust gave Ernest's interest to trial-court respondent and appellant Emma Myers. Given common last names, in this decision we refer to the parties and the decedent by their first names, except we refer to Kathleen and Bruce together as the Smiths.

Emma filed a motion for summary adjudication in which she argued the Smiths' petition to have the amendment declared valid was barred by the statute of limitations contained in Code of Civil Procedure section 366.3 (section 366.3). Section 366.3, subdivision (a), states, "[i]f a person has a claim that arises from a promise or agreement with a decedent to distribution from an estate or trust or under another instrument, whether the promise or agreement was made orally or in writing, an action to enforce the claim to distribution may be commenced within one year after the date of death, and the limitations period that would have been applicable does not apply."

The trial court concluded that the statute of limitations contained in section 366.3 does not apply to the Smiths' petition and denied the motion for summary adjudication. After a bench trial, the trial court entered a judgment in favor of the Smiths.

On appeal, Emma argues the trial court incorrectly interpreted section 366.3 and incorrectly denied her motion for summary adjudication. We find the trial court correctly concluded section 366.3 does not apply. Because our resolution of this issue resolves this appeal in its entirety, we do not consider arguments the parties made regarding whether Emma could bring this appeal and affirm the trial court judgment.

FACTS AND HISTORY OF THE PROCEEDINGS

Factual Background

Kathleen is Ernest's daughter. Bruce is Kathleen's husband. Emma is Ernest's widow.

2

Ernest owned an agricultural property that consisted of two parcels (the ranch). In 1992, after the death of his prior wife, Ernest granted Kathleen a 45.8 percent interest in the ranch.

In 1999, Ernest married Emma.

On March 14, 2000, Ernest restated the Ernest Wilbur Myers 1992 Family Trust (trust). In the trust, as restated in 2000, Ernest stated he purposefully made no gifts to Kathleen, and he provided no gift to Bruce. The 2000 trust document states Ernest did not make a gift to Kathleen because he had or would make a gift of real or personal property to her outside of the trust. The trust directed the trustee to distribute Ernest's remaining 54.2 percent interest in the ranch to Emma upon Ernest's death. According to the trust, during his life, Ernest was both the settlor and trustee of the trust.

An amendment to the trust dated July 19, 2016, (amendment), which Emma maintained was not valid, identified the Smiths as beneficiaries of the trust. According to the amendment, Ernest's remaining right, title, and interest in the ranch was to be transferred to the Smiths upon his death. Emma was to continue to receive income from rental units located on the ranch.

Ernest died on August 22, 2016. Upon Ernest's death Emma became the trustee of the trust.

Proceedings in the Trial Court

On July 10, 2020, the Smiths filed a petition (1) for an order confirming the validity of the amendment; and (2) to remove Emma as the trustee of the trust. The petition alleged that under the terms of the amendment the Smiths were to receive title and possession of the ranch. Accordingly, in their prayer for relief, the Smiths requested an order that Emma transfer the ranch to them.

3

The petition alleged it concerned the internal affairs of the trust and, consequently, that the trial court had subject matter jurisdiction in the matter under Probate Code section 17200.

Emma filed a demurrer to the petition. As one of the stated grounds for demurrer, Emma argued that Bruce was not entitled to seek an order confirming the validity of the amendment, because he "failed to file his claim that the decedent left him a testamentary gift through a trust amendment within one year of the decedent's death," and was, therefore, time barred from seeking the requested order under section 366.3. The trial court overruled the demurrer in its entirety.

In her response to the petition, Emma asserted a statute of limitations defense based in part on section 366.3.

Emma filed a cross-petition to, among other things, invalidate the amendment. Emma alleged Ernest's execution of the amendment was "not his free and voluntary act in that" the Smiths "procured it through undue influence."

Emma filed a motion for summary adjudication related to the Smiths' request to confirm the validity of the amendment. In her motion, Emma argued the Smiths' claim was barred by the statute of limitations contained in section 366.3. The trial court denied the motion, concluding the statute of limitations in section 366.3 did not apply because the petition was regarding, "the internal affairs of a trust, not a promise relating to a distribution."

Emma filed a motion for reconsideration of its denial of her motion for summary adjudication. The trial court denied that motion.

On February 6, 2023, following a bench trial, the trial court issued a judgment in favor of the Smiths. It found the amendment valid, ordered Emma to transfer interest in the ranch to the Smiths as set forth in the amendment, denied Emma's cross-petition, and awarded costs to the Smiths.

Emma filed a notice of appeal on March 14, 2023.

DISCUSSION

I

*Principles of Review*

"The relevant facts are undisputed.  The key issue is the interpretation and application of Code of Civil Procedure section 366.3.  'Questions of statutory interpretation, and the applicability of a statutory standard to undisputed facts, present questions of law, which we review de novo.  [Citation.]' (*Jenkins v. County of Riverside* (2006) 138 Cal.App.4th 593, 604 [] [Fourth Dist., Div. Two].)" (*Estate of Ziegler* (2010) 187 Cal.App.4th 1357, 1363 (*Ziegler*); see also *American Alternative Ins. Corp. v. Superior Court* (2006) 135 Cal.App.4th 1239, 1245 ["The ruling on a motion for summary adjudication presents a question of law, so therefore, our review is de novo"].)

" ' "Our fundamental task in interpreting a statute is to determine the Legislature's intent so as to effectuate the law's purpose." ' (*Carson Citizens for Reform v. Kawagoe* (2009) 178 Cal.App.4th 357, 366 []; see *Fluor Corp. v. Superior Court* (2015) 61 Cal.4th 1175, 1198 [].)  ' " 'We begin with the plain language of the statute, affording the words of the provision their ordinary and usual meaning and viewing them in their statutory context, because the language employed in the Legislature's enactment generally is the most reliable indicator of legislative intent.' [Citations.]  The plain meaning controls if there is no ambiguity in the statutory language.  [Citation.]  If, however, 'the statutory language may reasonably be given more than one interpretation, " ' "courts may consider various extrinsic aids, including the purpose of the statute, the evils to be remedied, the legislative history, public policy, and the statutory scheme encompassing the statute." ' " ' " ' (*Fluor Corp.*, *supra*, at p. 1198.)" (*Center for Biological Diversity v. Department of Conservation, etc.* (2019) 36 Cal.App.5th 210, 231-232.)

5

## II

### *Applicability of Section 366.3*

A.  <u>Plain</u> <u>Language</u> <u>Interpretation</u>

Section 366.3 does not apply to the Smiths' petition to validate the trust instrument given the plain language of that provision.

Section 366.3, subdivision (a), starts with words that state it applies "[i]f a person has a claim that arises from a promise or agreement with a decedent to distribution from an estate or trust or under another instrument."

The word "promise" means "a declaration that one will do or refrain from doing something specified," "a legally binding declaration that gives the person to whom it is made a right to expect or to claim the performance or forbearance of a specified act," or "[a] reason to expect something." (Merriam-Webster's Collegiate Dict. (11th ed. 2003) p. 994, col. 1.) The word "agreement" means, "the act or fact of agreeing," "harmony of opinion, action, or character," "an arrangement as to a course of action," "a contract duly executed and legally binding," or "the language or instrument embodying such a contract." (Merriam-Webster's Collegiate Dict. (11th ed. 2003) p. 26, col. 1.)

Thus, section 366.3's statute of limitations applies if a claim is based on "a [decedent's] declaration that [the decedent would] do or refrain from doing something specified" or "an arrangement" with the decedent, in which the decedent had promised or agreed to arrange for the claimant to receive a distribution from an estate, trust, or other instrument.

Here, the Smiths are not alleging that Ernest made an agreement with anyone or promise to anyone to create testamentary documents that would provide them a distribution. They are also not alleging Ernest made a binding promise that they would gain full title to the ranch when he died. They are alleging the amendment itself requires the distribution, the amendment is valid, and they are entitled to receive the distribution

6

under the amendment.  Put differently, the Smiths are not alleging that Ernest promised or agreed to make a distribution to them and that he either (1) never followed-through or reneged on that promise; or (2) could not, due to that agreement or promise, amend the trust to prevent them receiving the ranch before he passed.  The Smiths' action is not based on something Ernest promised or agreed to do.

Emma makes various efforts to strain the plain language of the statute to make it fit the Smiths' petition, none of which are persuasive.  First, by ignoring the order of the words used in the statute, she suggests that section 366.3 applies to any claim for distribution based on a "promise or agreement *or other instrument*."  She reasons because the Smiths' claim arises from a trust amendment, which is an instrument, section 366.3 applies.

But, as the words are ordered in the statute, the statute plainly conveys that the statute of limitations applies to claims based on promises or agreements to create an instrument that will effectuate a distribution from the property of a decedent, rather than to claims based solely on the instrument effectuating the distribution.  That is, the statute contemplates a scenario in which a decedent had made an agreement with (or promise to) the claimant to execute a will, create a trust document, or prepare another instrument that would make the claimant a beneficiary upon the decedent's death.  The claim at issue would then be one to enforce that promise or agreement, regardless of what the will, trust, or other instruments designating a decedent's beneficiaries say.

Continuing with the incorrect assumption that section 336.3 was meant to apply to claims based on beneficiary designations in trust instruments, Emma argues that, in making its ruling, the trial court "ignore[ed]" the words in section 366.3 "that a 'claim for distribution may be commenced within one year after the date of the death' " and that the limitations period could not be tolled for any reason.  But the trial court did not ignore the one year requirement.  Instead, it read the entire statute, starting with the language

regarding when the stated statute of limitations would apply, and it correctly determined the statute did not apply.

Next, Emma argues that the trust amendment is, itself, a promise or agreement to distribute property to the Smiths as contemplated by section 366.3. In her opening brief, Emma cites *Key v. Tyler* (2019) 34 Cal.App.5th 505, 540, which states, " 'A declaration of trust constitutes a contract between the trustor and the trustee for the benefit of a third party. . . . The mutual consent of the parties to the express declaration of trust constitutes a contract between them, each having rights and obligations which may be enforced by the other and by the beneficiary designated in the contract.' (*Estate of Bodger* (1955) 130 Cal.App.2d 416, 424–425 [].)" (*Key v. Tyler, supra,* at p. 540.) In her reply brief, Emma reframes this argument a bit to argue instead that the "amendment . . . contains the decedent's promise to distribute the decedent's interest in trust real property to the respondents upon his death." We do not agree with these arguments.

Though the trust may have created an obligation for the trustee to distribute the property to the Smiths once Ernest died, he was free to revoke the amendment or to make an amendment that provided for a different distribution while he was still alive. The trust was not a "promise or agreement with [Ernest, the] decedent" that the distribution would be provided for in the trust. That is, in making the amendment, Ernest did not legally bind himself or otherwise irrevocably commit to ensure the ranch was distributed to the Smiths upon his death. On these facts, Ernest could have amended the trust again the day before he died without breaching a promise or agreement he made.

B. Legislative History

To the extent we consider the Legislative history of section 366.3, it supports our plain language interpretation of the statute.

The Legislature enacted section 366.3 in 2000 as part of Assembly Bill No. 1491 (1999-2000 Reg. Sess.) (Assembly Bill 1491). (Stats. 2000, ch. 17, § 1.) According to

8

the summary of Assembly Bill 1491 contained in the Assembly Floor Analysis, Assembly Bill 1491 made "various changes to the law governing contracts to make wills or trusts, 'no contest' clauses in such instruments, nomination of spouses as conservators, and jury trial rights in conservatorship cases." (Assem. Com. on Jud., Assem. Floor Analysis of Assem. Bill No. 1491 (1999-2000 Reg. Sess.) as amended Apr. 4, 2000, regarding concurrence in Sen. Amendments, p. 1.) It then states that as part of these changes Assembly Bill 1491, "[e]stablishes a one-year statute of limitations for claims which arise from a promise or agreement with a decedent to a distribution from an estate or trust, or under another legal instrument." (*Id.* at pp. 1-2, ¶ 2.) In commenting on the nature of Assembly Bill 1491 as passed by the Assembly, the analysis reiterated, "this bill made various changes to the law governing contracts to make wills or trusts . . . ." (*Id.* at p. 3.) Based on this, the plain reading of section 366.3 applies to a claim based on a promise or agreement made by a decedent to create an instrument that would effectuate a distribution to the claimant—and not to a claim based on right created by the instrument itself— which is consistent with the Legislature's intent in passing Assembly Bill 1491. It intended to make changes to laws governing *contracts to make wills or trusts*, or no contest clauses contained in estate documents. The Legislature did not mean to sweep into section 366.3's scope every action regarding the purported validity of a trust instrument or a trustee's failure to honor the terms of a trust amendment.

Further, the legislative history also supports a reading that the term "another instrument" refers to an instrument the decedent had agreed or promised to create, where a claim would arise from a breach of the promise or agreement to create the instrument. The Assembly Committee on Judiciary wrote, "[c]urrent law in this area applies only to contracts to make a will . . . . According to the sponsor, this provision has been rendered ineffective by the increasing use of living trusts and passing wealth *by other means involving beneficiary designations*. The sponsor asserts that it is inconsistent and confusing to have one rule that applies only to wills and not to other testamentary

9

writings." (Assem. Com. Jud., Analysis for the Assem. Com. on Jud. of Assem. Bill No. 1491 (1999-2000 Reg. Sess.), pp. 3-4, italics added.)

Emma's quotation of *Ziegler*, *supra*, 187 Cal.App.4th at page 1365, which in turn quotes some of the Legislative analysis prepared for Assembly Bill 1491, does not convince us that the Legislature intended to sweep claims asserting entitlement to distribution based on trust documents into the ambit of section 366.3's statute of limitations.

According to the history quoted in *Ziegler*, "the Legislature was concerned that existing law did 'not provide a uniform statute of limitations for claims arising from a contract to make a will or other promise or agreement with a decedent to a distribution from an estate or trust.' (Assem. Com. on Judiciary, Analysis of Assem. Bill No. 1491 (1999–2000 Reg. Sess.) as amended Jan. 3, 2000, p. 3.) It was advised that '[*c*]*urrent law has an uncertain statute of limitations in regard to equitable and contractual claims to distribution of estates*. In some cases, the statute may run three years from discovery of the action or four years under a contract theory.' (Assem. Com. on Judiciary, Analysis of Assem. Bill No. 1491 (1999–2000 Reg. Sess.) as amended Jan. 3, 2000, p. 4.) Accordingly, Code of Civil Procedure section 366.3 would 'establish[] a one-year statute of limitations for the enforcement *of these claims* . . . .' (Assem. Com. on Judiciary, Analysis of Assem. Bill No. 1491, *supra*, at p. 4.)" (*Ziegler*, *supra*, 187 Cal.App.4th at p. 1364, italics added, fn. omitted.)

The *Ziegler* court observed that the Legislature, "was also told that: 'The use of the one-year-from-date-of-death statute of limitations is important to the administration of estates and trusts since most are distributed by 18 months after the date of death. Allowing a claim to be commenced against distributees of an estate or trust or other instrument after a year from the date of death would bring hardship to beneficiaries and administrators alike, and would frustrate the policy in favor of the early closing and distribution of estates, proponents state. Using the same statute of limitations for all

10

claims against the estate would also be more convenient for the fiduciaries administering estates.' (Sen. Com. on Judiciary, Analysis of Assem. Bill No. 1491 (1999–2000 Reg. Sess.) as amended Mar. 23, 2000, pp. 11–12.)" (*Ibid.*, italics added, fn. omitted.)

Emma argues this language shows the Legislature felt it was important that claims be resolved promptly, and, therefore, the Legislature must have meant to include claims like this claim, which is based on a trust instrument. The Smiths argue that interpreting section 366.3 to apply to claims like theirs would undermine the policy in favor of the early closing of estates, because potential trust beneficiaries would be forced to bring actions or risk losing their rights, generating time-consuming litigation. We can reconcile the plain meaning of the statute and the aim of early closure of estates: as enacted, section 366.3 limits the time in which a claimant can bring an action based on matters external to testamentary documents to a time that is shorter than the average time it takes to distribute estates. In so doing, it ensured administrators and beneficiaries would be apprised of claims to property of the estate based on promises and agreements that were made external to testamentary documents before the distribution of the corpus of the estate.

### C.  Cases Interpreting Section 366.3

Emma argues that case law consistently holds that section 366.3 bars all trust distribution claims filed more than a year after the decedent's death. The cases Emma cites for this proposition are inapposite.

Emma cites *Yeh v. Tai* (2017) 18 Cal.App.5th 953, 966 (*Yeh*), to support her argument that, "Section 366.3 applies to all instruments which work a distribution to heirs or beneficiaries upon the decedent'[s] death." *Yeh* concerned a breach of fiduciary duty action that a decedent's wife filed following his death, in which she alleged he promised to place her on title to a condominium purchased during the marriage. (*Id.* at p. 957.) The decedent had, instead, transferred title to a trust, of which his children from

11

a prior marriage were the beneficiaries. (*Ibid.*) The defendants to the action argued the deed through which the plaintiff was to be put on title was an "instrument" contemplated under section 366.3, and, therefore, section 366.3's statute of limitations applied to the decedent's promise. (*Yeh*, at p. 966.) The court disagreed. (*Id.* at p. 967.) The court explained that under section 366.3, "[t]he 'instrument' referred to must be one that works a 'distribution,' " and the term " '[d]istribution' . . . refers to the disbursement of assets to heirs or beneficiaries." (*Yeh*, at p. 966.) It concluded that "a promise of putting plaintiff on the title, even by deed, is not for the purpose of disbursement of assets after death under Code of Civil Procedure section 366.3." (*Ibid.*) Based on this, a more apt interpretation of *Yeh* is that it supports a finding that section 366.3 applies to promises to prepare instruments that effectuate distributions upon death, and it does not apply to promises to create instruments that are not designed to effectuate transfers upon death.

This interpretation does not help Emma, because, regardless of whether the instrument a decedent promised to create is the sort contemplated by section 366.3, section 366.3 still requires an agreement or promise to create that instrument.

*Ziegler*, *supra*, 187 Cal.App.4th at pages 1359 and 1362, arose under a different set of facts and concerned a creditor's claim. In *Ziegler*, the decedent had entered into a written agreement that—in consideration for providing continued care to the decedent while he was alive—Richard LaQue would receive the decedent's home upon decedent's death. (*Id.* at p. 1359.) When decedent died without a will, LaQue moved into decedent's home unopposed. (*Ibid.*) LaQue did not file a claim with decedent's estate until a year and three weeks after decedent died. (*Ibid.*) He filed one creditor's claim for the value of his services under a quantum meruit theory, and a second creditor's claim for the estimated value of the house, representing the value of his services on a contract theory. (*Id.* at p. 1362.) LaQue argued the subject agreement was not a promise to make a future distribution from the decedent's estate, but a present promise to convey the house, albeit one that could not be performed until decedent's death. (*Id.* at p. 1360.) The court found

this distinction to be meaningless and that the statute of limitations contained in section 366.3 applied. (*Ibid.*)

In reaching its conclusion, the court reasoned, "[S]ection 366.3 has been construed to 'reach any action predicated upon the *decedent's agreement* to distribute estate or trust property in a specified manner.' (*Ferraro v. Camarlinghi* (2008) 161 Cal.App.4th 509, 555 [].) Specifically, it has been held to apply even to fraud and unjust enrichment claims, as long as they are 'predicated on a decedent's promise to make specified distributions upon his death.' (*Ibid.*) Moreover, it has been held to apply to claims based on a contract to leave certain property by will, even when the claimant is seeking only damages for breach of the contract and is not seeking the property itself. (*Stewart v. Seward* (2007) 148 Cal.App.4th 1513, 1521–1523.)" (*Ziegler*, *supra*, 187 Cal.App.4th at p. 1365, italics added.)

The court noted LaQue had likened his agreement with the decedent to a beneficiary designation on a bank or brokerage account. (*Ziegler*, *supra*, 187 Cal.App.4th at p. 1366.) The court found the analogy inapt, explaining, "[t]he difference . . . is that *the Agreement was a contract; normally, a beneficiary designation is not*. Even though the Agreement was worded in the present tense, it required some further action by the Administrator (representing Ziegler) to make the transfer happen. The notion that the title was instantly transferred, although appealing, is a legal fiction; actually, the estate continued to hold the title. [¶] The appropriate analogy would be that it was as if Ziegler had *entered into a contract to make a beneficiary designation* naming LaQue but *had never actually made such a designation while he lived*; it was left up to the Administrator either to perform the contract, by turning over estate assets, or to breach the contract. If he breached, then, as in this case, LaQue would be asserting a 'claim that arises from a promise or agreement with a decedent to distribution from an estate' within the meaning of Code of Civil Procedure section 366.3." (*Ibid.*, italics added.)

13

Here, the Smiths alleged Ernest executed an amendment designating them as his successors in interest to the property. This action was not based on a "promise," "agreement," or "contract" that bound Ernest to make the Smiths beneficiaries which needed to be effectuated with a testamentary document giving his estate administrators instructions to distribute the property to the Smiths. Ernest actually amended the trust, and that amendment is what the Smiths sought to validate and enforce with this action. The Smiths are not alleging Ernest breached a "promise or agreement" to arrange a distribution.

The other cases Emma cites for the proposition that case law supports her position fare no better than *Yeh* and *Ziegler*. In each of them, the underlying agreement upon which the lawsuit was based was one external to the wills, trusts, or other testamentary documents governing the distribution of the decedent's estate, or the court determined section 366.3 did not apply. (*Maxwell-Jolly v. Martin* (2011) 198 Cal.App.4th 347, 349 [different statute of limitation applied because liability was created by statute]; *McMackin v. Ehrheart* (2011) 194 Cal.App.4th 128, 131 [decedent's cohabitant filed a complaint alleging the decedent had promised him a life estate in the home if she died first, in exchange for his love, care, and companionship; decedent died intestate]; *Ferraro v. Camarlinghi, supra,* 161 Cal.App.4th at pp. 517, 527 [husband and wife agreed to equally distribute their estate among their four children; he predeceased her and she left everything to her two children]; *Stewart v. Seward, supra,* 148 Cal.App.4th at p. 1516 [decedent had agreed with his predeceased wife to leave 50 percent interest in real property to the predeceased daughter; his will left the whole property to others]; *Embree v. Embree* (2004) 125 Cal.App.4th 487, 490 [marital settlement agreement included a provision that if the ex-husband predeceased the ex-wife, a trust or annuity would be established to provide her a monthly sum for the rest of her life; no annuity or trust was established].) Notably, none of the cases Emma cites are based on factual scenarios in which a court was asked to decide if section 366.3's statute of limitations applies to

14

petitions to validate trust documents.  "It is axiomatic that cases are not authority for propositions that are not considered."  (*California Building Industry Assn. v. State Water Resources Control Bd.* (2018) 4 Cal.5th 1032, 1043.)

DISPOSITION

We affirm the judgment, the ruling on the motion for summary adjudication, and the ruling on the motion for reconsideration.  The Smiths shall recover their costs on appeal under California Rules of Court, rule 8.278(a).

_____
HULL, Acting P. J.

We concur:

_____
RENNER, J.

_____
FEINBERG, J.

Filed 7/10/24

<u>CERTIFIED</u> <u>FOR</u> <u>PUBLICATION</u>

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Glenn)

----

| | |
|---|---|
| KATHLEEN SMITH et al.,<br><br>       Plaintiffs, Cross-defendants and Respondents,<br><br>    v.<br><br>EMMA MYERS, as Trustee, etc.,<br><br>       Defendant, Cross-complainant and Appellant. | C098169<br><br>(Super. Ct. No. 20PR01166)<br><br>CORRECTED ORDER CERTIFYING OPINION FOR PUBLICATION |

THE COURT:

     The opinion in the above-entitled matter filed on June 27, 2024, was not certified for publication in the Official Reports. For good cause it now appears that the opinion should be published in the Official Reports and it is so ordered.

BY THE COURT:


_____
HULL, Acting P. J.


_____
RENNER, J.


_____
FEINBERG, J.

1

## EDITORIAL LISTING

APPEAL from a judgment of the Superior Court of Glenn County, Donald Cole Byrd, J.  Affirmed.

Mark Johnson, for Defendant, Cross-complainant and Appellant.

Peters, Habib, McKenna, Juhl-Rhodes & Cardoza, James P. McKenna and Chance M. Hansen for Plaintiffs, Cross-defendants and Respondents.